**Commonwealth v. Kibler**

C.P. of Lehigh County, no. CR-4433-2009.

*Anna-Kristie Morffi, deputy district attorney,* for Commonwealth.

*Andrea Olsovsky,* for defendant.

STEINBERG, *J.,* March 1, 2011—On September 8, 2010, the appellant entered a nolo contendere plea to aggravated assault.[1] The appellant kicked Trooper Louis Rosenthal in the nose, causing a bilateral fracture which required surgery.[2] Trooper Rosenthal was also diagnosed with post-concussion syndrome, and his life has been dramatically affected by the appellant's conduct.[3]

A presentence report was received and reviewed prior to the sentencing, as well as a Psychological Evaluation prepared by Frank M. Dattilio, Ph.d.[4] Counsel for the appellant also submitted a "sentencing memorandum" with Dr. Dattilio's report and letters from Susan Matta, DO, and Officer Alvin Knighton, a close personal friend of the appellant who is employed by the City of New Brunswick Police Department. This court was also provided and reviewed hospital surveillance footage of the events at the

---

1. 18 Pa.C.S. 2702(a)(3).

2. Notes of testimony, Sentencing (hereinafter N.T.S.) p. 43.

3. N.T.S. pp. 46-51.

4. Dr. Dattilio's evaluation was attached to the presentence report as well as the sentencing memorandum submitted by appellant's trial counsel.

Lehigh Valley Hospital on June 13, 2009.

A sentencing hearing was held on November 10, 2010 at which Trooper Rosenthal and Trooper Arthur Johnson, the police prosecutor, testified on behalf of the Commonwealth. The appellant presented the testimony of William Thompson, a long-time friend of the appellant; Sarah Roberts, the appellant's 15-year-old daughter, as well as the appellant. All of the reports, letters, and testimony were considered, along with the sentencing guidelines, prior to imposing a standard range sentence of not less than twelve (12) months nor more than forty-eight (48) months in the State Correctional Institution at Muncy.

On November 19, 2010 a "motion to reconsider and modify sentence" was filed and subsequently denied. A timely notice of appeal was filed, and appellant's counsel filed a "concise statement of matters complained of on appeal" on January 13, 2011 pursuant to this court's directive. It is alleged that although this court imposed a standard range sentence that the circumstances of the case made "the application of the guidelines...unreasonable... manifestly excessive...given the unique circumstances of the case; exceeded the pre-sentence investigator's recommendation; failed to account for defendant's cooperation; and ordered incarceration in a state correctional facility when the guidelines permit confinement in a county facility..."[5] The appellant also contends that this court failed to give "meaningful consideration to the facts of the crime or character of the defendant and...came to a manifestly unreasonable decision."[6]

## FACTUAL BACKGROUND

5. Concise statement of matters complained of on appeal, ¶ 1(a).
6. Id. at ¶ 1(b).

On June 13, 2009, Trooper Rosenthal, and Trooper Christopher Maner responded to 5465 Amanda Drive, in North Whitehall Township to investigate a report of a domestic disturbance. According to Trooper Johnson, the state police had responded to that address approximately fourteen (14) times over the past four or five years for a variety of domestic related incidents.[7] On this occasion, the appellant's husband contacted the state police because the appellant had slapped her daughter, and an argument between the appellant and her husband was seemingly out of control.[8]

When the troopers arrived, they observed that the appellant was agitated and irate. She was yelling "up and down the street" and threatening to commit suicide.[9] A decision was made to transport the appellant to the hospital, and she initially agreed to go with the troopers. However, she then refused to accompany them to the hospital, began cursing, and attempted to go inside her home. The troopers prevented her from doing so by grabbing her wrist, and with that the appellant scratched both troopers and spit on Trooper Maner.[10] EMS was requested to respond, and when they did, the appellant was tied to a gurney. She kicked one of the EMS workers and cursed at them.[11]

Upon arrival at the hospital, the appellant was placed in a secure room with restraints. At some point the restraints were removed, and hospital staff alerted Trooper Rosenthal that they needed assistance because the appellant was

---

7. N.T.S. p. 11.
8. Notes of testimony, Guilty Plea (hereinafter N.T.G.P.), pp. 13-14.
9. N.T.G.P. p. 14.
10. Id.; N.T.S.pp. 34-35.
11. N.T.G.P. p. 14.

uncontrollable.[12] Trooper Rosenthal, in an effort to avoid having the appellant aim her expectorate at him, donned a mask and hospital gown.[13] He stood by the doorway to the appellant's room and repeatedly requested that she calm down. His requests were returned with obscenities and belligerence by the appellant. Trooper Rosenthal then displayed his taser in an effort to demonstrate to the appellant the seriousness of the situation.[14]

The appellant returned to the stretcher, but continued her cursing and verbal abuse. Security guards then grabbed the appellant in an effort to restrain her on the stretcher, and with that the appellant attempted to kick or knee them in the face.[15] Trooper Rosenthal made a decision to attempt to control the appellant with a dry stun from his taser.[16] When he did so, the appellant "reeled back to get momentum and shot her foot straight at me; I did not have time to move or block, heel struck me in [the] nose. I heard a loud crack, like a large tree branch snapping."[17] Blood started to shoot out of his nose like a "geyser."[18] "It wasn't even hitting my shirt, because it was shooting out like a fire-hose on the floor...."[19]

Trooper Rosenthal remained in the hospital overnight and described his pain as being a nine (9) out of ten (10).[20] His vision was greatly impaired and he experienced daily

12. N.T.S.p. 34.
13. *Id.* at p. 35.
14. *Id.* at p. 36.
15. *Id.* at p. 37.
16. *Id.* at pp. 37-39, 54. According to Trooper Rosenthal, a dry stun is the use of a taser with the cartridge off so that the probes do not ignite. It is an electric current that causes slight muscle restrictions, but causes less pain than a "regular" stun.
17. N.T.S. at p. 58.
18. *Id.* at p. 40.
19. *Id.*
20. *Id.* at p. 41.

headaches. He underwent surgery a week after the injury and anticipates further surgeries. Trooper Rosenthal, who has been boxing since the age of fifteen (15), explained this as the "greatest impact I have ever felt to my nose."[21] After his surgery, Trooper Rosenthal was not breathing through his nose and was forced to miss a month and a half of work.[22] He met with a list of specialists and is on a variety of medications.[23] This surgery has had a detrimental affect on Trooper Rosenthal's sleeping patterns, his vision, his social life, and his work performance, to the extent where Trooper Rosenthal believes his career may be in jeopardy.[24]

Trooper Johnson, who saw Trooper Rosenthal the night of his injury, described him as being in extreme discomfort and pain. When he saw him one (1) to two (2) weeks later Trooper Rosenthal was still swollen "about his nose and face, below his eyes."[25] Specifically, Trooper Johnson stated "he hasn't been the same since this happened."[26] Based on Trooper Johnson's observations, the appellant's actions were completely intentional in that she "makes a very conscious effort to kick at his face."[27]

The testimony of Mr. Thompson, a long-time friend of the appellant, described Randy Kibler, the appellant's husband, as mentally and verbally abusive to the appellant. He also testified that Mr. Kibler admitted to consuming a beer at a neighbors' the night the police responded. The appellant's daughter, Sarah Roberts, also testified that Mr.

---

21. *Id.* at pp. 30,44.
22. N.T.S. p. 45.
23. *Id.* at pp. 45-46.
24. *Id.* at pp. 47-50.
25. *Id.* at pp. 14-15.
26. *Id.* at p. 16.
27. N.T.S. p. 20.

Kibler had been drinking that day. This testimony was in sharp contrast with the testimony of Trooper Rosenthal, who saw no evidence that Mr. Kibler was under the influence of alcohol, nor even smelled alcohol on his breath.[28]

Ms. Roberts also testified that since this incident, the appellant's behavior has improved, and she's "much more supportive."[29] She read a letter outlining how the appellant's 21 medication adjustments have positively affected her behavior, and that she is "bettering herself as a person."[30]

Finally, the appellant, Catherine Kibler, testified on her own behalf. She was apologetic and described that she cannot recall the events that occurred on June 13, 2009 because she was over medicated.[31] The appellant described the daily mental abuse she sustained in her relationship with Mr. Kibler.[32] The appellant also explained that she has been making improvements in her lifestyle. Specifically, at the time of sentencing, the appellant's physician had changed her medications, she was seeking a divorce, and was searching for employment.[33]

## DISCUSSION

"It is well-settled that appeals of discretionary aspects of a sentence are not reviewable as a matter of right." *Commonwealth v. Ladamus*, 896 A.2d 592, 595 (Pa. Super. 2006); see also *Commonwealth v. Shugars*, 895 A.2d 1270, 1274 (Pa. Super. 2006); *Commonwealth v. McNabb*,

---

28. *Id.* at pp. 32-33.
29. *Id.* at p. 75.
30. *Id.* at p. 76.
31. *Id.* at pp. 82-84.
32. N.T.S. p. 89.
33. *Id.* at pp. 84-86.

819 A.2d 54, 55 (Pa. Super. 2003); and *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617 (Pa. 2002). The appellant must demonstrate that a substantial question exists concerning the sentence. *Commonwealth v. Lee*, 876 A.2d 408, 411 (Pa. Super. 2005).

The determination of whether a particular issue raises a substantial question is to be evaluated on a case-by-case basis." *Commonwealth v. Perry*, 883 A.2d 599, 602 (Pa. Super. 2005). A claim that a sentence is unreasonable can raise a substantial question when an appellant "sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the sentencing code or a particular fundamental norm underlying the sentencing process. *Mouzon*, 812 A.2d at 627. However, a substantial question requires something more than alleging excessiveness. See *Ladamus*, 896 A.2d at 595.

Here, the appellant's allegations do not present a substantial question. A standard range sentence was imposed, which did not violate either the sentencing scheme set forth in the sentencing code or a fundamental norm underlying the process. Claims of inadequate consideration of mitigating circumstances do not raise a substantial question for review. *Id.* at 595. *Commonwealth v. Cannon*, 954 A.2d 1222 (Pa. Super. 2008); *Commonwealth v. Matroni*, 923 A.2d 444 (Pa. Super. 2007); *Commonwealth v. Kraft*, 737 A.2d 755 (Pa. Super. 1999). Additionally, when a sentence is imposed within the standard range of the sentencing guidelines, there is, generally, no substantial question. *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010), *Commonwealth v. Maneval*, 688 A.2d 1198 (Pa. Super. 1997); *Commonwealth v. Johnson*, 666

A.2d 690, 692 (Pa. Super. 1995);[34]

If the merits of the appellant's sentencing claims are considered, then the sentencing court's decision-making is scrutinized under an abuse of discretion standard. *Commonwealth v. Walls*, 592 Pa. 557, 564, 926 A.2d 957, 961 (Pa. 2007); *Commonwealth v. Hoch*, 936 A.2d 515, 519 (Pa. Super. 2007). In determining whether there has been an abuse of discretion in the imposition of a sentence, "the appellate court must give great weight to the sentencing court's discretion, as he or she is in the best position to measure the factors such as the nature of the crime, the defendant's character, and the defendant's display of remorse, defiance, or indifference." *Commonwealth v. Mouzon*, 828 A.2d 1126, 1128 (Pa. Super. 2003). The following explanation has been used as the starting point for determining if the sentencing court properly exercised its discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006), citing *Commonwealth v. Rodda*, 723 A.2d 212,

---

34. Cf. *Commonwealth v. Trippett*, 932 A.2d 188 (Pa. Super. 2007) (challenge to the discretionary aspects of standard range sentence requires demonstration that actions of sentencing court were either inconsistent with sentencing code or contrary to fundamental norms underlying sentencing process).

214 (Pa. Super. 1999)(en banc).

Essentially, the focus is on whether the court's sentence is "clearly unreasonable." An "unreasonable decision from the sentencing court would be one that is "'irrational' or 'not guided by sound judgment.'" *Walls*, 926 A.2d at 963, quoting The Random House Dictionary of the English Language, 2084 (2nd ed. 1987).

Here, a standard range sentence was imposed, which was also significantly less than the statutory limits.[35] The appellant's offense gravity score was a six (6),[36] and her prior record score was zero (0). Therefore, the standard range of the sentencing guidelines was three (3) to twelve (12) months,[37] and the minimum sentence of twelve (12) months imposed in this case was at the high end of the standard range of the guidelines.

A review of the sentencing proceedings reflects that this court considered the sentencing guidelines.[38] The guidelines themselves are advisory and nonbinding, but the sentencing court must consider them in formulating a sentence. *Walls*, 926 A.2d at 964. The purpose of the guidelines was explained in *Walls* as follows:

Consultation of the guidelines will assist in avoiding excessive sentences and further the goal of the guidelines, viz., increased uniformity, certainty, and fairness in sentencing. Guidelines serve the laudatory

---

35. The appellant entered a nolo contendre plea to aggravated a - sault, a felony of the second degree. A person convicted of a felony of the second degree may be sentenced "for a term which shall be fixed by the court at not more than ten years." 18 Pa. C.S. § 1103(2). The appellant potentially faced a sentence of not less than five (5) years nor more than ten (10) years.

36. 204 Pa. Code § 303.15.

37. 204 Pa. Code § 303.16.

38. N.T.S. p. 100.

role of aiding and enhancing the judicial exercise of judgment regarding case-specific sentencing. Guidelines may help frame the exercise of judgment by the court in imposing a sentence. Therefore, based upon the above, we reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors - they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence. *Id.* at 964-965.

This court also considered the presentence report and Dr. Dattilio's evaluation.[39] See *Commonwealth v. Rhodes,* 8 A.3d 912, 919 (Pa. Super. 2010) quoting *Commonwealth v. Moury,* 992 A.2d at 171 (Pa. Super. 2010)([W]here the sentencing court had the benefit of a presentence investigation report it is assumed that the sentencing court was aware of relevant information regarding the defendant's character and weighed those factors along with mitigating statutory factors). See also *Commonwealth v. Devers,* 519 Pa. 88, 99, 546 A.2d 12, 18 (Pa. 1988); *Commonwealth v. Pollard,* 832 A.2d 517, 526 (Pa. Super. 2003). One of the appellant's contentions is that this court's sentence exceeded the presentence investigator's recommendations which were contained in the presentence report. Not only are recommendations contained in a presentence report not binding on the sentencing court, but merely mirroring those recommendations would constitute an improper entrustment of the sentencing decision. *Commonwealth v. Moore,* 583 A.2d 1, 2 (Pa. Super. 1990) (A trial court must not delegate its sentencing decision to any person or

---

39. *Id.*

group).[40]

It is apparent that this court considered all of the relevant facts and circumstances in imposing the appellant's sentence. In other words, in reaching the sentencing decision, "the protection of the public, the gravity of the offense as it relates to the impact on the victim and the community, the defendant's rehabilitative needs and the sentencing guidelines" were all evaluated. 42 Pa. C.S. § 9721(b); *Commonwealth v. Feucht*, 955 A.2d 377, 383 (Pa. Super. 2008).

The appellant's out-of-control behavior may have cost Trooper Rosenthal his career. A review of the sentencing transcripts describes how the injuries have not only affected his employment, but also his personal life. These injuries, without question, caused "impairment of [his] physical condition [and] substantial pain." 18 Pa. C.S. § 2301. They went beyond just causing immediate pain, but instead, have had long-term consequences to him. The appellant's kick to the nose has literally impacted Trooper Rosenthal's life for the almost two years since this offense, and for the foreseeable future.

The police responded to the appellant's home, as they had many times in the past, in an effort to defuse a domestic disturbance. Due to the appellant's threats of suicide and irrational behavior, it was determined that it was in her best interests to transport her to the hospital. Troopers

---

40. Neither the Pa.R.Crim.P. 702(A)(3) (Pre-Sentence Investigation Report) nor any caselaw requires the probation department to include a sentencing recommendation in a presentence report, nor compels the sentencing court to abide by it. See *Commonwealth v. Monahan,* 860 A.2d 180, 185 (Pa. Super. 2004); see also *Moore* supra, at 2, which recognizes that probation departments are not prohibited from making sentencing recommendations, but the court "does not look with favor" upon such recommendations.

Rosenthal and Maner recognized she needed treatment, even after she scratched both of them, spit repeatedly on Trooper Maner, and hurled epithets in their direction. This course of action was continued even after she kicked one of the paramedics in the shoulder and threatened to kill one of the troopers and his family.[41] Ultimately, a 302 commitment was initiated, and the appellant remained hospitalized until June 25, 2009.

It is the appellant's contention that her over-medicated condition and mental illness caused her to act in the manner previously described.[42] It appears that these are the "unique circumstances" referenced in the appellant's 1925(b) statement. The appellant does not deny kicking Trooper Rosenthal, but claims no memory of the events. Dr. Dattilio concluded that the appellant does have a "significant amount of psychopathology and tends to deny psychopathological problems."[43] She also produced a profile on the aggression questionnaire "that suggests that she may be prone towards acting-out her aggression physically and verbally, depending on the circumstances."[44] Finally, Dr. Dattilio reached the opinion that the appellant "was in a diminished state of consciousness at the time of instant offense and was therefore unable to conform her behaviors to the requirement of the law."[45]

The appellant's mental health condition at the time of the offense was a mitigating circumstance that this court considered in imposing the standard range sentence.[46] Likewise, her current stabilization on her most recent

---

41. Psychological Evaluation, Dr. Dattilio, p.9.
42. *Id.* at p. 11.
43. *Id.* at p. 13.
44. *Id.*
45. *Id.* at p. 14.
46. N.T.S. pp. 100-102.

medications regimen was also weighed and evaluated.[47] In other words, the gravity of the offense and its impact on the victim was balanced with the mitigating circumstances presented by the appellant. As a result, the difficulty in sentencing the appellant was not lost on this court.[48] Contrary to the Pa. R.A.P. 1925(b) statement, "meaningful consideration" was given "to the facts and character of the defendant," as well as her rehabilitative needs.

A review of the sentencing hearing also reflects that the appellant's lack of criminal history was considered.[49] Other factors, including her relationship with her husband and its effect on her behavior, were examined. The marital relationship, this court concluded, was "at best tumultuous...at worst...an abusive relationship. But it sounds like it was abusive on both sides."[50]

The mitigated circumstances presented by the appellant were not overlooked, but neither excused nor diminished the seriousness of her offense. The suggestion that her past and present mental health should require a mitigated range sentence would require a disregard for the other relevant factors, and blatantly ignore the injuries caused by the appellant. This court was not prepared to do so, and recognizes that the police are accorded the same protections as all victims. The appellant may not have been taking the proper medication at the time of the offense, but that failure does not require others to suffer the consequences. Mental health problems were a component, not a justifiable excuse, for the assault. Likewise, it is laudable that she is currently stabilized on her medication, but that does not

47. *Id.* at pp. 97, 105, 107.
48. *Id.* at p. 98.
49. *Id.* at p. 102.
50. *Id.* at p. 103.

turn the clock backwards, nor is it a guarantor of future conduct. The appellant's responsibility for this offense is unchallenged, and a sentence within the standard range of the sentencing guidelines is not an abuse of discretion.[51]

For all the foregoing reasons, the judgment of sentence

---

51. The appellant's remaining claim that it was error to place her in a state correctional facility, rather than a county facility, mischaracterizes the concept of sentencing levels which are found in the Sentencing Guidelines. See 204 Pa. Code § 303.11. The appellant was a Level 3 offender (Offense Gravity Score of 6) which permits the following considerations:

(3) Level 3 - Level 3 provides sentence recommendations for serious offenders and those with numerous prior convictions, such that the standard range requires incarceration or County Intermediate Punishment, but in all cases permits a county sentence. The standard range is defined as having a lower limit of incarceration of less than 12 months. Included in Level 3 are those offenses for which a mandatory minimum sentence of less than 12 months applies and for which a state or county intermediate punishment sentence is authorized by statute. The primary purposes of this level are retribution and control over the offender. If eligible, treatment is recommended for drug dependent offenders in lieu of incarceration. The following sentencing options are available:

*Total confinement in a state facility.*

Total confinement in a state facility, with participation in the State Motivational Boot Camp (see § 303.12(b) for eligibility criteria).

State Intermediate Punishment (see § 303.12(c) for eligibility criteria).

Total confinement in a county facility under a state or county sentence (see 61 P.S. §331.17).

Partial confinement in a county facility.

County Intermediate Punishment (see § 303.12(a) for eligibility criteria).

(emphasis added)

Confinement in a state correctional institution was an option in this case and the appellant "has no constitutional or other inherent right to serve [her] imprisonment in any particular institution or type of institution... [However,] a court should consider the differences between the state and county prison environment in choosing to sentence an individual to a state rather than a county facility." *Commonwealth v. Fullin,* 892 A.2d 843, 852 (Pa. Super. 2006) citing *Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa. Super. 1999)(en banc). The sentencing order reflects that it was recommended that the appellant be sent to a state correctional institution which could address her mental health problems. State facilities are better equipped to address mental health concerns then county prisons.

should be affirmed.

## ORDER

And now, March 1, 2011, it appearing that the appellant has filed a notice of appeal in the above-captioned matter; it further appearing that the appellant has filed a "concise statement of matters complained of on appeal" pursuant to Pa.R.A.P. 1925(b); and it further appearing that the attached opinion satisfies the requirements of Pa.R.A.P. 1925(a);

It is hereby ordered that the clerk of courts, criminal division, shall transmit the record in the above-captioned matter to the Superior Court forthwith;

It is further ordered that the clerk of courts shall include with the transmittal of the record the following documents:

1.  A copy of the appellant's pre-sentence investigation report and psychological evaluation by Frank M. Dattilio, Ph.D. for review by the Superior Court, and that said reports shall be sealed to preserve their confidentiality pursuant to Pa.R.Crim.P. 703.

2.  Notes of testimony from the nolo contendere plea entered September 8, 2010.

3.  Notes of testimony from the sentencing held on November 10, 2010.