J-S21021-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QURAN S. LINDSEY-COOLEY | : | |
| | : | |
| Appellant | : | No. 1276 WDA 2017 |

Appeal from the Judgment of Sentence June 29, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001356-2016

BEFORE:  OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY MURRAY, J.:                          FILED MAY 07, 2018

Quran S. Lindsey-Cooley (Appellant) appeals from the judgment of sentence imposed after he pled guilty to one count of aggravated assault and one count of possession of a firearm by a minor.[1]  We affirm.

The trial court summarized the factual and procedural background of this case as follows:

> On March 6, 2016, Appellant removed a loaded semi-automatic Hi-point nine millimeter pistol from his waistband and shot Jessie Wolfgang at 23rd and Wallace Streets.  The bullet traveled two feet through the victim's body and the victim required a bowel resection.  Appellant was 17 years old at the time.
>
> On June 29, 2016, Appellant filed a Motion to Decertify to Juvenile Court.  On October 24, 2016, after a hearing on the issue, this [c]ourt denied Appellant's Motion.  On May 10, 2017, Appellant filed a Motion to Recuse the Honorable John Garhart.

_____

[1] 18 Pa.C.S.A. §§ 2702, 6110.1.

On May 12, 2017, Appellant's Motion to Recuse was denied. On May 16, 2017, [Appellant] pled guilty to Aggravated Assault and Possession of a Firearm By a Minor. The Commonwealth nolle prossed the remaining counts of Criminal Attempt/Criminal Homicide, Aggravated Assault, Firearms not to be Carried Without a License, Possessing Instruments of Crime, two counts Recklessly Endangering Another Person, and Terroristic Threats. At the plea hearing, Appellant acknowledged that he fired the bullet and that the shooting was done without legal justification or defense.

[Appellant] was sentenced on June 29, 2017 to a period of incarceration of 54 months to 108 months, followed by 10 years of probation on the Aggravated Assault charge, and a concurrent sentence of 5 years' probation on the Firearms charge. This sentence was in the low end of the standard range. On July 7, 2017, Appellant filed a post-sentence motion which was denied by this [c]ourt on August 7, 2017.

On September 5, 2017, Appellant filed a timely Notice of Appeal. This [c]ourt filed a 1925(b) Statement on September 7, 2017, to which Appellant filed a Concise Statement of Matters Complained of on Appeal on September 28, 2017, raising the following alleged errors: (1) the [c]ourt erred in failing to decertify the charges in this case to juvenile court; (2) the court erred in failing to recuse itself after a "scathing and far-reaching recitation of findings of fact and opinion" at the conclusion of the decertification hearing; (3) the court erred in failing to sentence Appellant in the mitigated range, or below, of the sentencing guidelines.

Trial Court Opinion, 10/18/17, at 1-2 (citations to notes of testimony omitted).

On appeal, Appellant presents two issues for our review:

1. Did the trial court commit an abuse of discretion and/or error of law when it denied Appellant's request for decertification to Juvenile Court?

2. Did the trial court commit an abuse of discretion by relying on an impermissible factor, namely, uncharged criminal conduct, while fashioning his sentences?

Appellant's Brief at 8.

In his first issue, Appellant asserts that the trial court erred when it denied his request to have his case decertified to juvenile court based on the court's findings that a transfer of Appellant's case would not serve the public interest and Appellant would not be amenable to treatment in the juvenile system. Appellant's Brief at 33, 36-42. Appellant argues, "[s]pecifically, the Court erred when it concluded the three years remaining before Appellant's 21st birthday would not provide sufficient opportunity for rehabilitation and supervision and that old and unsubstantiated photographs posted to social media, purportedly depicting Appellant with guns/money, provided true insight in Appellant's character and history.[2] Id. at 36.

We have discussed our review of an order in response to a request for a decertification order:

> The Juvenile Act, 42 Pa.C.S.A. § 6301[,] et seq., is designed to effectuate the protection of the public by providing children who commit 'delinquent acts' with supervision, rehabilitation, and care while promoting responsibility and the ability to become a productive member of the community. 42 Pa.C.S.A. § 6301(b)(2). The Juvenile Act defines a 'child' as a person who is under eighteen years of age. 42 Pa.C.S.A. § 6302. Typically, most crimes involving juveniles are tried in the juvenile court of the Court of Common Pleas.
>
> Our legislature, however, has deemed some crimes so heinous that they are excluded from the definition of 'a delinquent act.' Pursuant to 42 Pa.C.S.A. § 6322(a) and § 6355(e), when a juvenile is charged with a crime, including murder or any of the other offenses excluded from the definition of 'delinquent act' in

_____

[2] The Commonwealth has not filed a responsive brief, stating in correspondence to this Court that it "relies on the well-reasoned Order of the trial court and requests that appellant's claims be dismissed." Letter, 3/12/18.

42 Pa.C.S.A. § 6302, the criminal division of the Court of Common Pleas is vested with jurisdiction. See 42 Pa.C.S.A. § 6302[.]

When a case involving a juvenile goes directly to the criminal division, the juvenile can request treatment within the juvenile system through a transfer process called 'decertification.' To obtain decertification, it is the juvenile's burden to prove, by a preponderance of the evidence, that transfer to the juvenile court system best serves the public interest. 42 Pa.C.S.A. § 6322(a).

Pursuant to § 6322(a), the decertification court shall consider the factors contained in § 6355(a)(4)(iii) in determining whether the child has established that the transfer will serve the public interest. These factors are as follows:

(A) the impact of the offense on the victim or victims;
(B) the impact of the offense on the community;
(C) the threat to the safety of the public or any individual posed by the child;
(D) the nature and circumstances of the offense allegedly committed by the child;
(E) the degree of the child's culpability;
(F) the adequacy and duration of dispositional alternatives available under this chapter and in the adult criminal justice system; and
(G) whether the child is amenable to treatment, supervision or rehabilitation as a juvenile by considering the following factors:
(I) age;
(II) mental capacity;
(III) maturity;
(IV) the degree of criminal sophistication exhibited by the child;
(V) previous records, if any;
(VI) the nature and extent of any prior delinquent history, including the success or failure of any previous attempts by the juvenile court to rehabilitate the child;
(VII) whether the child can be rehabilitated prior to the expiration of the juvenile court jurisdiction;
(VIII) probation or institutional reports, if any;
(IX) any other relevant factors[.]

42 Pa.C.S.A. § 6355(a)(4)(iii).

> While the Juvenile Act requires that a decertification court consider all of these factors, it is silent as to the weight assessed to each by the court. However, [w]hen a juvenile seeks to have his case transferred from the criminal division to the juvenile division, he must show that he is in need of and amenable to treatment, supervision or rehabilitation in the juvenile system. If the evidence presented fails to establish that the youth would benefit from the special features and programs of the juvenile system and there is no special reason for sparing the youth from adult prosecution, the petition must be denied and jurisdiction remains with the criminal division.
>
> . . . This Court will not overturn a decision to grant or deny decertification absent a gross abuse of discretion. An abuse of discretion is not merely an error of judgment but involves the misapplication or overriding of the law or the exercise of a manifestly unreasonable judgment based upon partiality, prejudice or ill will.

*Commonwealth v. Brown*, 26 A.3d 485, 491-193 (Pa. Super. 2011) (most quotations, some citations, and emphasis omitted; other emphasis added).

Instantly, the trial court determined that Appellant failed to meet his burden of demonstrating that transfer of his case to juvenile court was warranted. The trial court stated that it "properly considered the serious nature of the crime and Appellant's calculated role in the shooting of the victim." Trial Court Opinion, 10/18/17, at 6. The court referenced its "commentary [which] was an on-the-record consideration of the entire decertification record, which resulted in a 246 page transcript and a small Everest of Exhibits." *Id.* The trial court offered a detailed explanation:

> First of all, let's go right through them. 6322(a) requires me to consider certain factors and I'll go through them.

The impact of the victim - of the offense on the victim. And here there's one primary victim. And in this case the defendant…was the person who shot the victim.

A bullet tore into the victim's body, tore through his internal organs and lodged in a leg. In doing so it did enormous damage to the intestinal tract of the victim and it is likely, although not certain, that the victim will forever be forced to wear a bag, and as he said, spend the rest of his life smelling like a two-year-old's diaper. It will diminish every effect of his life; his ability to work, his ability to mate and procreate, his ability to simply enjoy life…

What effect did it have on the community? Here, you know, I think the impact is enormous. This gunshot, this act, tends to cause people to move from communities, it destabilizes communities, and it was part of an act of drug dealing, which is literally pouring poison into the youth of the community from generation to generation…

The threat of safety to the public. Here your expert focused on, "Well, he shot another addict," which frankly I find offensive and I reject. He shot a human being he had no right to shoot and whether that person was an addict or an addict that owed him money, that person was entitled to have his bodily integrity and his safety protected by the law…no less…than…an altar boy.

Plus often these gunshots…don't hit the intended target…And oftentimes…the bullet ricochets and hits an innocent child.…

So, the threat to the safety of the public by a defendant discharging a firearm in an urban environment, where he might hit the person intended, [is] enormous…

The circumstances [of the offense] committed by - and here the statute uses the word child, but I will not use that word because the defendant, although he is a juvenile, is not a child. He was a young adult. And I'm already familiar with the literature that the expert points to me here about how the brains of adolescents aren't fully developed. And in certain circumstances that may come into play where a person doesn't make nice judgments…

But here, the judgments made by this defendant, as the Commonwealth would have it, are much more gross. The judgments he made were, one, to engage in dealing heroin; to engage in that as a business; and to be prepared to carry a firearm to protect himself, and it appears here to inflict death on other human beings who didn't pay him. This isn't a case brought to the razor's edge by nice judgments by an immature mind. This is a case which is brought to fruition by some very longstanding judgments by the defendant in this case...made with full awareness of his ability to be killed or to kill in his business endeavor.

So in terms of the juvenile's culpability? Enormous, substantial.

The adequacy [of dispositional alternatives] under this chapter, okay, let's talk about that. (F). If the juvenile system handles this case, the defendant, who I think is largely resistant to treatment by virtue of some of the things he said in unguarded moments - and I do credit the Facebook posts more than most because I think they're unguarded moments. You can say they are merely one kid bragging to another, but oftentimes they're unguarded moments. They're aspirational. And here he talks about having contempt for these stupid ass classes...And his demeanor is fuck the law. I don't believe that can be mitigated or changed by a few months, in this case 24 months, in a juvenile facility...Certainly what's going to happen to him as an adult perhaps is not as nuanced as what might happen in the juvenile system, but the state has taken the steps to give some special treatment to him while he remains a minor....

...The next question, is the child amenable to treatment, rehabilitation as a juvenile. Given the time available to him, my answer is no, not in 24 months. If this crime had been committed at a younger age, we were talking about a 12 or 13 year old...and the juvenile system had longer to work, I might feel differently. But, on what I see on the defendant's actions, on his willing to kill another human being for money, on his willing to deal in heroin, on his willing to say fuck the law, and on his expression of, "I would like to see a police officer dead," I don't think he's amenable to treatment under the juvenile system.

Age. He was a juvenile at the time of the offense, but he was in months, in months of his birthday.

Mental capacity. He's within the low normal range…

Maturity. Here are some things we know about the defendant. He's able to run a business, although it's an illegal business. He's able to conceal that from his probation officer. He's able to master the tools of youth, the social networks of Facebook and Twitter, or whatever. And he's got a girlfriend that he's involved in a fully mature [intimate] relationship…So he's not quote, unquote, a mere child…

The degree of sophistication. Granted we don't have in order to be a drug dealer need to be Professor Moriarty from Sherlock Holmes, but nevertheless someone who's going to be involved in drugs has to make certain calculations. They have to make a risk reward calculation….How do I collect my debts? And more importantly in this case how do I enforce my will against those people who would choose not to pay me. So there's a good deal of sophistication here….It's clearly not the impulsive act that we sometimes see. It's not someone who takes a gun from their father's gun case and does something with alcohol. This is a deliberate act…

In his favor, his prior record is not extensive, that's true. What we have him for is a DUI; and he struck his girlfriend, allegedly, and that was thrown out. But it appears to the Court, given what the evidence of this crime reveals about him, what his phone calls reveal and what his Facebook postings reveal, is that he was able to conceal a criminal enterprise for a substantial period of time and people in his life blinded themselves to his criminality…

The nature and extent of any prior delinquent history and here it's minimal, here it's minimal. But probation officer testified that their evaluation of him from the brief time they had to deal with him was that he was not amenable to further treatment. And he hadn't failed in that, but he was not making progress. He was going through the steps. So under 6 and 7 of my checklist, they don't think the child can be rehabilitated prior to the expiration of juvenile court jurisdiction and neither do I. 24 months is simply not enough.

Those, I think are all the factors that are here. And so the question for me is, look, what do I do with him? Do I send him to

Juvenile Court? And the answer is I think a clear and resounding no.

Trial Court Opinion, 10/18/17, at 4-6, citing N.T., 10/21/16, at 237-245 (footnotes omitted). Notably, the trial court concluded, "[t]his isn't a case where the defense came close, close to convincing me." N.T., 10/21/16, at 245.

Our review confirms the trial court's findings. The decertification transcript contains testimony from the following 10 witnesses:

- Jessica Macrino, a therapist who counseled Appellant at his high school on four occasions;

- Randolph Matuscak, an expert in forensic social work who evaluated Appellant, advocated for decertification and opined that Appellant would be amenable to treatment in the juvenile system;

- Daryl Craig, Sr., a family friend and minister who had frequent contact with Appellant through the years and expressed his concern that Appellant not be placed in an adult facility because Appellant "is not a bad kid" and the adult system is "very emotionally psychologically oppressive";

- Ryan Gaines, a pastor from Appellant's church with employment experience in the juvenile justice system who opined that "the adult system [would] not rehabilitate or help" Appellant;

- Dale Henderson, a retired school teacher and volunteer at the Erie County Prison who attested to Appellant's positive attitude and academic capabilities;

- Gary Seymour, the Deputy Warden at the Erie County Prison who stated that Appellant had incurred three misconduct violations (1 for interfering with staff and using abusive language and 2 for fighting with other juveniles) during the seven months he had been imprisoned for the underlying offenses;

- Erie Police Detective Sean Bogart, the affiant in the underlying case who testified to recovering a gun, bullets and

digital scales from the home Appellant shared only with his mother;

- Jesse Wolfgang, Appellant's victim, who testified to knowing Appellant, being a heroin addict, purchasing from heroin from Appellant, and "stiffing" Appellant on a sale; Mr. Wolfgang opined, "I hate to say it, but if this incident hadn't happened with [Appellant], I'd be dead" from the addiction or "other reckless behaviors."

- Stephanie Ackley, who administers the program for youth and serves as the re-entry coordinator at SCI-Pine Grove, where Appellant likely would be imprisoned if convicted as an adult, testified that SCI-Pine Grove serves individuals ages 18-22, with programs "developed specifically to house juveniles convicted as adults," and a multitude of programs including individualized educational, vocational, therapeutic and life skills training. Ms. Ackley stated her belief that "Pine Grove now offers everything that the youth system has to offer with the addition of now extra programming, extra transitional opportunities . . ."

- Nick Strauch, a juvenile probation officer who began supervising Appellant in December 2014 and testified to Appellant's juvenile history.

On this record, reviewed as a whole, we discern no abuse of discretion by the trial court. Brown, supra. Contrary to Appellant's assertions, there is ample support for the trial court's conclusion that Appellant failed to meet his burden that transfer of his case to juvenile court would serve the public interest, and that he would be amenable to treatment in the juvenile system. As noted above, the trial court stated that Appellant "did not come close to convincing" the court that decertification was appropriate. Further, the trial court's reference to Appellant's Facebook posts was a mere complement to the court's detailed reasoning addressing myriad factors in support of its

determination that Appellant would not be amendable to treatment in the juvenile system.[3]  Accordingly, Appellant's decertification issue lacks merit.

In his second issue, Appellant challenges the discretionary aspects of his sentence.  He claims that the trial court erred because it "fashioned a lengthier sentence based upon its conclusions about Appellant's involvement in the drug trade, which was uncharged criminal conduct."  Appellant's Brief at 45.  We disagree.

Preliminarily, we note that Appellant has failed to cite any case law or legal authority to support his sentencing argument.  The Rules of Appellate Procedure provide:

> Rule 2119.  Argument
>
> (a)    General rule.  The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a).  Importantly:

> The argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities.  This Court will not consider the merits of an argument, which fails to cite relevant case or statutory authority.  Failure to cite

---

[3] This Court has affirmed the trial court's denial of a motion in limine where the Commonwealth was precluded from admitting Facebook posts because it failed to authenticate them.  Commonwealth v. Mangel, --- A.3d ---- (Pa. Super. March 15, 2018).  In this case, Appellant did not challenge the authenticity of the Facebook posts admitted at the decertification hearing.

> relevant legal authority constitutes waiver of the claim on appeal.

In re Estate of Whitley, 50 A.3d 203, 209 (Pa.Super. 2012), appeal denied, 69 A.3d 603 (Pa. 2013) (citations and quotation marks omitted). Accordingly, Appellant's sentencing claim is waived.

Waiver notwithstanding, Appellant's argument regarding "uncharged criminal conduct" lacks merit. When appealing the discretionary aspects of a sentence:

> [w]e conduct a four-part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

Commonwealth v. Leatherby, 116 A.3d 73, 83 (Pa. Super. 2015) (citation omitted). Here, Appellant filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included a Rule 2119(f) statement in his appellate brief. As to whether Appellant has raised a substantial question, "[i]n order to establish a substantial question, the appellant must show actions by the trial court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process." Commonwealth v. Treadway, 104 A.3d 597, 599 (Pa. Super. 2014) (citation omitted). "The determination of whether a particular case raises a substantial question is to be evaluated on a case-by-case basis." Commonwealth v. Seagraves, 103

A.3d 839, 841 (Pa. Super. 2014), appeal denied, 116 A.3d 604 (Pa. 2015) (citation omitted).

To the extent Appellant may be deemed to have raised a substantial question, the trial court properly observed:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

> Commonwealth v. Rodda, 723 A.2d 212, 214 (Pa. Super. 1999) (en banc) (internal quotations and citations omitted).

> Where the sentencing court has the benefit of a pre-sentence report, the law presumes that the court was aware of the relevant information regarding the appellant's character and weighed those considerations along with the mitigating statutory factors delineated in the Sentencing Code. Commonwealth v. Cruz-Centeno, 668 A.2d 536, 545 (Pa. Super. 1995)(quotation and citations omitted). Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. Id.

> Here, [the trial court] considered the following: (1) pre - sentence investigative report; (2) the Pennsylvania Sentencing Code and all its factors; (3) the Pennsylvania Sentencing Guidelines; (4) statements by Appellant and counsel; (5) statements by the counsel for the Commonwealth; (6) letters from Appellant's friends/relatives; (7) Appellant's age, background and rehabilitative needs; (8) the nature, circumstances, and seriousness of the offense; and, (9) protection of the community; (9) the unusual fact that the victim felt that the shooting prevented the victim from dying of a drug overdose; (10) the posts and photographs of Appellant's Facebook page. (Sentencing Transcript, June 29, 2017, pp. 22-23). [The trial court] further noted that [it] was sentencing Appellant in the low end of the

standard range of the sentencing guidelines, rather than the mitigated range due, in part, to:

> The explanations [Appellant] has offered for me of how he came to be in that car, his denial of his relationship with drugs, and his denial of his relationship with guns, I find to be untruthful and I do not credit.

(Sentencing Transcript, June 29, 2017, p. 23). The sentence was tailored to Appellant's individual situation and the reasons for the sentence imposed were clearly set forth on the record. Any lesser sentence would have depreciated the nature of the offense. Because Appellant's sentence was within the statutory limits and not manifestly excessive, there was no sentencing error.

Trial Court Opinion, 10/18/17, at 7-8. The trial court's reasoning is supported by the record and appropriate. See, N.T., 6/29/17, at 2-26. Finding no error, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/2018