J-S37021-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAMS TUNNER | : | |
| | : | |
| Appellant | : | No. 3569 EDA 2015 |

Appeal from the Judgment of Sentence Entered July 14, 2015
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002730-2010

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED SEPTEMBER 07, 2018**

Appellant Williams Tunner, a.k.a. William Turner, appeals from the judgment of sentence imposed for his conviction for criminal conspiracy to commit possession of a controlled substance with intent to deliver.[1] Tunner complains that his sentence is manifestly excessive and that the court failed to state its reasons for departing from the sentencing guidelines. We affirm.

The testimony at Tunner's jury trial established that on May 9, 2008, the Philadelphia Police Department set up surveillance of a residence based on information received from a confidential informant that drugs were being sold there. The police waited as the confidential informant went inside the residence and purchased three red zip-lock packets of crack cocaine using

---

*   Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 903; 35 P.S. § 780–113(a)(30).

prerecorded "buy" money. While the confidential informant was still inside, an unidentified person exited the residence, entered a stopped vehicle, and returned to the residence after one or two minutes. After the vehicle drove away, the police stopped and searched it. Tunner was seated in the passenger seat, and an amber pill bottle fell into the street as he got out of the vehicle. The pill bottle contained 13 red zip-lock packets of crack cocaine, identical to those purchased by the confidential informant. The driver was in possession of the prerecorded buy money. *See* Trial Court Opinion, filed April 20, 2017, at 2-3 (unpaginated). The jury convicted Tunner of conspiracy on March 15, 2012.[2]

At the August 2, 2012 sentencing hearing, Tunner's counsel requested a sentence within the recommended guidelines range, which was a minimum of 15 to 21 months' incarceration (plus or minus six months in the mitigated and aggravated ranges). N.T., 8/2/12, at 12, 17. Counsel noted that the pre-sentence investigation report ("PSI") and psychiatric evaluation indicated that Tunner has mental health issues, including a seizure disorder caused by a prior gunshot wound to the head.[3] *Id.* Tunner's mother, aunt, and godmother testified on his behalf, and requested that the court provide Tunner with

---

[2] The jury found Tunner not guilty of possession with intent to deliver, 35 P.S. § 780–113(a)(30), and possession of a controlled substance, 35 P.S. § 780–113(a)(16).

[3] No PSI appears in the certified record.

- 2 -

mental health treatment and impose a short sentence that would allow Tunner to return to his family. *Id.* at 14-17.

The Commonwealth recounted Tunner's prior criminal history, which included juvenile adjudications for false imprisonment, terroristic threats, and conspiracy, and a conviction for drug possession. *Id.* at 20-21. According to the prosecutor, Tunner had been arrested 27 times by the time of sentencing and charged with various offenses, including drug charges, firearms charges, assault, theft, and witness intimidation. *Id.* The prosecutor recounted that Tunner delayed the instant case through "numerous listings" and refusal to accept a plea bargain, and did not admit his involvement with the crime. *Id.* at 22. The prosecutor pointed out that when Tunner was being interviewed for the presentence investigation report, he still denied his involvement. *Id.*

Sergeant Michael Davis of the Philadelphia Police Department testified that he has had "50 or 100" interactions with Tunner, and saw him nearly every day while on patrol. *Id.* at 23, 27. Sergeant Davis testified that he had served a warrant on Tunner at his residence for an incident of witness intimidation that Sergeant Davis himself had witnessed. *Id.* at 23, 25. Afterward, Tunner called the police station and warned Sergeant Davis that the next time he comes to Tunner's house he had "better bring a body bag." *Id.* at 23, 28. During their next conversation, Tunner clarified that he meant Sergeant Davis would be leaving Tunner's home in a body bag. *Id.* at 24, 28. Sergeant Davis stated that crime victims are afraid of testifying against Tunner "because of his relatives, other family members." *Id.* at 24. Sergeant Davis

also testified that at the beginning of the sentencing hearing, Tunner "turned around and just called [him] a dick head in the [c]ourtroom when [the judge] was not on the" bench, and that at the prior sentencing date, which resulted in a continuance, Sergeant Davis heard Tunner say, "I am still the boss." *Id.* at 24, 32. The Commonwealth requested a sentence of six to 12 years' incarceration. *Id.* at 33.

Tunner exercised his right to allocution. *Id.* at 34-38. He reminded the court that he was found not guilty for possession with intent to deliver and requested that that the court not hold against him the arrests that did not result in convictions, or his decision to have a jury trial. *Id.* at 34-35. Tunner stated that a long sentence will not help him to move forward and will only lead him to "this nonsense." *Id.* at 38. Tunner also briefly stated that he was trying to change his life, that he knew he has to serve some time in prison, and that he "will take [the sentence] and strive and better [him]self so when [he] get[s] done, . . . [he] will come back to the City of Philadelphia and be a productive citizen." *Id.* at 37-38.

The trial court sentenced Tunner to four and one-half to nine years' incarceration, and stated the following on the record:

> I have reviewed everything and I didn't have an opportunity to review the PARS [(Preliminary Arraignment Reporting System)]. I am not claiming I am not going to. I have reviewed everything and the PSI and the prior record score[4] in great detail. I paid particular attention to the presentence investigation.

---

4 Tunner's prior record score was 4. *See* N.T., 8/2/12, at 10, 11.

I told you to take it seriously and you told the officer that this is what hanging around with the wrong crowd gets you. That is not what it gets, it gets you shot. And dealing in drugs and that is a conspiracy and you openly fought me on that.

I don't really think you are remorseful for what you have done. And I told you if things don't go your way, it is a minimum of 2 to 4. Under the circumstances considering everything and you keep rolling the dice, you did come up snake eyes this time. It is your right.

Based on the totality of everything, it is 4 and a half to 9 years.

N.T., 8/2/12, at 39.

Tunner appealed. On December 17, 2014, we vacated Tunner's judgment of sentence and remanded the case to the trial court for resentencing. *See Commonwealth v. Tunner*, No. 2392 EDA 2012, unpublished memorandum at 7-8 (Pa.Super. filed December 17, 2014). We held that the record did not reflect whether the court was aware of the relevant range of the sentencing guidelines of a minimum of 15 to 21 months (plus or minus six months in the mitigated and aggravated ranges)[5] or whether it considered the sentencing factors enumerated in 42 Pa.C.S.A. § 9721(b),[6] and

---

[5] "[Section 9721(b) of the Sentencing Code] requires a trial judge who intends to sentence a defendant outside the guidelines to demonstrate on the record, as a proper starting point, his awareness of the sentencing guidelines." *Commonwealth v. Johnson*, 666 A.2d 690, 693 (Pa.Super. 1995) (citation omitted).

[6] Section 9721(b) states, "[T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

that the court failed to state the factual basis and specific reasons for the significant departure from the guidelines range.[7] *Id.*

On July 14, 2015, the trial court held another sentencing hearing. By this point, Tunner had already served three and one-half years of his four and one-half to nine year sentence. *See* N.T., 7/14/15, at 4. Neither party presented additional evidence or much argument. Tunner again allocuted. *Id.* at 8-11. This time, he recounted his upbringing, stated his desire to provide guidance to his two sons, and stated that he wants to show his sons "as well as other community young men that there's another way to go in life as opposed to just hanging in society destroying yourself, and not only destroying yourself, but destroying your family and society as well." *Id.* at 8-10. Tunner claimed that he is a "changed man," that he understands "the severity of [his] actions," and that, upon release, the court would be responsible for imposing sentence for any violations of parole or probation. *Id.* at 9-10. He requested a chance "to re-enter society and [his] family's life as well," in order to "go and continue on getting the proper help" that he needs, such as counseling, and to try to "find a way to deal with the problems that [he has] within [him]self mentally and emotionally as opposed to just resorting to narcotics, things of that nature." *Id.* at 10-11.

---

[7] *See Johnson*, 666 A.2d at 693 (stating Section 9721(b) requires a judge deviating from the guidelines to state on the record the "factual basis and specific reasons" for the deviation).

The court resentenced Tunner to three and one-half to seven years' incarceration, followed by three years' probation, with credit for time served. The court stated:

> Things are going so differently in my head. The last time that you were in front of me you told me I was an idiot, didn't understand the laws of conspiracy. You told Sergeant Davis that he was a dick head and that the next time he shows up at your house he better bring a body bag. Your attitude has improved. That much I give you. That allocution was completely night and day from what I saw before me three and a half years ago.
>
> The guidelines in this matter were 15 to 21. I did sentence you in accordance with your attitude. When you came here after a jury trial telling me I was a moron, telling the officer what you said, and telling him that he better bring a body bag, I sentenced you accordingly. I could have given you up to only six months more. But time has changed you. I can see that. Now maybe I'm being snowed; maybe I'm not. But I do see a stark contrast between the man that appeared before me three and a half years ago and what I'm looking at today.
>
> In accordance with that, and because the guidelines are what they are, I'll give you three and a half to seven, credit for time served, to be followed by three years probation to be supervised by the mental health unit.
>
> . . .
>
> I understand that the sentence because of the [Superior] Court's opinion is still above the guidelines, but I took a lot into account. Number one, there was a complete lack of remorse when I saw you last time. I think you are somewhat remorseful now, but I still remember the facts of this case. I still remember your repeated outbursts in this matter. I still believe that you're in need of mental health treatment. I had always believed that you can learn a vocation while you were in prison. And, hopefully, you've taken advantage of that.
>
> I'm cogni[z]ant of the fact that they cut off your Social Security before you were even arrested. Hopefully you've taken the time

- 7 -

to take courses to prepare yourself for when you are released into the community.

I did find that you were a danger to society. You seem to have cleaned up your act somewhat.

*Id.* at 11-14.

Tunner filed a *pro se* Motion for Reconsideration two days later, which was denied by operation of law in November 2015.[8] Tunner filed a counseled notice of appeal two days later.[9]

_____

[8] Hybrid representation is typically prohibited, and *pro se* filings by represented defendants considered legal nullities. **See Commonwealth v. Ali**, 10 A.3d 282, 293 (Pa. 2010). However, we do not find the fact that Tunner filed his post-sentence Motion for Reconsideration *pro se* precludes him from appellate review in this instance, as it appears that there was confusion over whether appellate counsel was to file post-sentence motions on Tunner's behalf. The trial court docket reflects that on the date of Tunner's resentencing, the court permitted Tunner's counsel to withdraw, and appointed new counsel "for purposes of appeal." **See** Trial Ct. Docket at no. 304-05; Attorney Appointment Order, 7/14/15. The trial court did not specify whether appellate counsel was to handle Tunner's post-sentence motions. The trial court also failed to follow Pa.R.Crim.P. 576 by forwarding the *pro se* Motion for Reconsideration to Tunner's counsel and treating it as a nullity. We will therefore consider Tunner's appeal to be timely and his issues preserved. **See Commonwealth v. Leatherby**, 116 A.3d 73, 78-79 (Pa.Super. 2015) (holding that where there was confusion over which counsel would file post-sentence motions, and where the breakdown in court procedures affected the defendant's right to appeal, the fact that the post-sentence motion was filed by the defendant *pro se* did not "offend considerations of hybrid representation" and require the Court to find the appeal untimely).

[9] Tunner had also filed a *pro se* Notice of Appeal in conjunction with his Motion for Reconsideration; that appeal was quashed as premature as his Motion for Reconsideration was pending before the trial court. **See** Order, 9/21/15 (*per curiam*). After filing a new Notice of Appeal, Tunner's appellate counsel petitioned to withdraw from representation in September 2016; the trial court appointed new appellate counsel, and upon that counsel's motion, we remanded the case in December 2016 for the filing of a new Pa.R.A.P. 1925(b)

Tunner raises the following issue:

> Did the trial court err when it abused its discretion and sentenced [Tunner] to a term of incarceration that departed from the Pennsylvania Sentencing guidelines, which was unreasonable, due to the fact that it was so manifestly excessive that it constituted too severe a punishment and the trial court failed to state on the record, specific reasons for this departure?

Tunner's Br. at 2 (unnecessary capitalization omitted).[10] Specifically, Tunner complains that the court did not fully consider that Tunner was in need of mental health treatment, that he had the support of his family, and that he has three children. *Id.* at 17. Tunner also argues that the court noted at the re-sentencing that he was more remorseful than at his original sentencing, which should be considered a mitigating, and not aggravating, factor. *Id.* at 20.

Tunner has petitioned this Court to appeal the discretionary aspects of his sentence; we must therefore conduct a four-part inquiry before reaching the merits of the claims. ***Commonwealth v. Griffin***, 65 A.3d 932, 935

---

statement and supplemental Pa.R.A.P. 1925(a) opinion. ***See*** Order, 12/12/16 (*per curiam*). Tunner filed a Rule 1925(b) statement in January 2017, the trial court issued a Rule 1925(a) opinion in April 2017, and in September 2017, the supplemental record was transmitted to this Court.

[10] As the certified record did not include any sentencing transcripts nor any statement written by the trial court contemporaneously with sentencing explaining the court's sentence, we entered a *per curiam* order on July 10, 2018, requesting that the trial court supplement the certified record with the sentencing transcripts within ten days of the date of the order. The transcripts were received by this court on August 1, 2018, 22 days later.

(Pa.Super. 2013). We must determine whether: (1) the appeal is timely, (2) the issues were properly preserved, (3) Tunner's brief contains a statement pursuant to Pa.R.A.P. 2119(f),[11] and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Id.* "A substantial question exits only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa.Super. 2013) (citation omitted).

Here, Tunner filed a timely notice of appeal, preserved his issues in a post-sentence motion, and included a Rule 2119(f) statement in his brief. *See* Tunner's Br. at 12. Moreover, Tunner's claim that the court imposed an unreasonable sentence outside the guidelines range, and that the court failed to state its reasons for doing so, raises a substantial question. *See Commonwealth v. Eby*, 784 A.2d 204, 206 (Pa.Super. 2001); *Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa.Super. 1999). We therefore permit his appeal, and turn to the merits of his claims.

---

[11] "An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence." Pa.R.A.P. 2119(f).

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014) (citation omitted). "[W]hen reviewing sentencing matters, we must accord the sentencing court great weight as it is in the best position to view the defendant's character, displays of remorse, defiance or indifference, and the overall effect and nature of the crime." *Commonwealth v. Zurburg*, 937 A.2d 1131, 1135 (Pa.Super. 2007) (quoting *Commonwealth v. Hanson*, 856 A.2d 1254, 1260 (Pa.Super. 2004)).

When imposing sentence, "the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). The court "is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation." *Antidormi*, 84 A.3d at 761 (quotation marks and citation omitted).

The court is also obligated to consider the guidelines ranges for the minimum sentence length adopted by the Pennsylvania Commission on Sentencing. 42 Pa.C.S.A. § 9721(b). When a court imposes a sentence outside

the guidelines, the court is to provide "a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." ***Antidormi***, 84 A.3d at 760. However, "this requirement is satisfied when the judge states his reasons for the sentence on the record and in the defendant's presence." ***Id.*** (citation and quotation marks omitted). "The court is not required to parrot the words of the Sentencing Code, stating every factor that must be considered under Section 9721(b)," but "[t]he record as a whole must reflect due consideration by the court of the statutory considerations." ***Id.*** at 761.

Pursuant to Section 9781(c), an appellate court should vacate a sentence and remand where: "(1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is clearly unreasonable based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is unreasonable." ***Commonwealth v. Bricker***, 41 A.3d 872, 875-76 (Pa.Super. 2012) (quoting ***Commonwealth v. Bowen***, 975 A.2d 1120, 1123-24 (Pa.Super. 2009) (quotation marks omitted)). "The term 'unreasonable' generally means a decision that is either irrational or not guided by sound judgment." ***Commonwealth v. Daniel***, 30 A.3d 494, 497 (Pa.Super. 2011). A sentence can be deemed unreasonable either upon review of the elements contained in § 9781(d)—(1) "the nature and circumstances of the offence and characteristics of the defendant," (2) the sentencing court's opportunity to observe the defendant, (3) the findings of the sentencing court, and (4) the guidelines—"or if the sentencing court

failed to take into account the factors outlined in 42 Pa.C.S. § 9721(b)." *Id.* An appellate court must not *re-weigh* the factors under Section 9721, but rather must determine whether "the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable[.]" *Bricker*, 41 A.3d at 876.

Here, the court imposed a minimum sentence of three and one-half years, which exceeds the highest minimum sentence, under the sentencing guidelines, of 27 months. *See* 204 Pa.C.S.A § 303.16(a). However, while the sentence fell outside the guidelines, the court acknowledged the standard guidelines range of 15 to 21 months. N.T., 7/14/15, at 11. The court also explained that the upward deviation was due to the lack of remorse Tunner had displayed at his original sentencing hearing, and stated that it had originally sentenced to a minimum of four and one-half years "in accordance with [his] attitude." *Id.* at 11, 13. The court noted that at the trial and previous sentencing, Tunner had called the judge an idiot for not understanding the law regarding criminal conspiracy; told Sergeant Davis that he was a "dick head," and on multiple occasions had threatened to kill him; and made "repeated outbursts" in the courtroom. *Id.* at 13. The court stated that it had believed that Tunner was in need of mental health treatment, and that he had posed a danger to society. *Id.* at 13-14. The court also determined that Tunner's attitude had improved, that his allocution was a "stark contrast" and "night and day" at his second sentencing hearing, and that he has

- 13 -

"cleaned up his act somewhat." *Id.* at 11-14. For these reasons, the court imposed a new sentence of a minimum of three and one-half years' incarceration, to be followed by three years' probation.

Given the foregoing remarks, we conclude that the court imposed an individualized sentence and adequately stated its reasons for doing so on the record at the time of sentencing. While the court did not parrot the words of section 9721(b), it clearly considered the protection of the public and Tunner's rehabilitative needs, both at the time of the original sentencing and at the re-sentencing. 42 Pa.C.S.A. § 9721(b); *Antidormi*, 84 A.3d at 761. The court's recollection of Tunner's behavior during trial and Tunner's conspiracy charge indicates that it was well aware of the nature of the offense for which it was sentencing Tunner. 42 Pa.C.S.A. § 9721(b).

Tunner's arguments to the contrary merit no relief. The court undoubtedly considered Tunner's allocution, as the court stated that Tunner's new remorse was the reason it did not re-impose its original, longer sentence. That the court recognized that Tunner was more remorseful *after* serving three and one-half years in prison does not negate the aggravating factors found by the court which justified the imposition of the three and one-half year sentence.[12] The court also acknowledged Tunner's ongoing need for mental

_____

[12] To the extent that Tunner believes his new sentence should be based solely on his allocution at his second sentencing hearing, we disagree. Tunner presents no authority supporting the proposition that the court should have ignored the facts of the case.

- 14 -

health treatment. Finally, the court was not required to consider Tunner's family as a mitigating circumstance, particularly where the Commonwealth introduced evidence that his family may have contributed to his criminal involvement.

We repeat that we are not permitted to reweigh the sentencing factors in the trial court's stead. *Daniel*, 30 A.3d at 497. Nor do we find this sentence irrational or unreasonable or an abuse of the court's discretion, given the court's findings and opportunity to observe Tunner. 42 Pa.C.S.A. § 9781(d); *Daniel*, 30 A.3d at 497; *Zurburg*, 937 A.2d at 1135. We therefore affirm the court's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/7/18