1999 PA Super 2

**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Jon RODDA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 9, 1998.

Filed Jan. 7, 1999.

Mary E. Schaffer, Ebensburg, for appellant.

Christian A. Fisanick, Assistant District Attorney, Barnesboro, for Commonwealth, appellee.

Before CAVANAUGH, DEL SOLE, JOHNSON, HUDOCK, EAKIN, STEVENS, MUSMANNO, ORIE MELVIN and LALLY–GREEN, JJ.

JOHNSON, J.:

¶ 1 In this appeal, we revisit the issue of the degree of specificity required in the trial court's contemporaneous statement at sentencing to explain the court's reasons for deviating from the sentencing guidelines, 204 Pa.Code § 303.1–303.18 at 303.1(d). In *Commonwealth v. Royer*, 328 Pa.Super. 60, 476 A.2d 453, 458 (Pa.Super.1984), a panel of this Court held that "[w]here the trial judge deviates from the sentencing guidelines … he must set forth on the record, at sentencing, in the defendant's presence, the permissible range of sentences under the guidelines." We now conclude that where the court imposes sentence "outside the sentencing guidelines," the court need not recite the numeric range of sentences within the guidelines so long as the record demonstrates the court's recognition of the applicable sentencing range and the deviation of the sentence from that range. Because the record in this case fails to establish that the court was cognizant of the applicable sentencing range, we find that its statement of reasons for sentencing outside the guidelines is insufficient. Accordingly, we vacate the judgment of sentence and remand for resentencing.

¶ 2 This case arises out of allegations that Jon Rodda engaged in multiple acts of sexual misconduct with two juveniles, ages thirteen and fourteen, over a three-year period spanning 1989 through 1991. The Commonwealth charged Rodda with twelve counts of Indecent Assault, seven counts of Corruption of Minors, two counts of Indecent Exposure, seven counts of Endangering the Welfare of Children, five counts of Involuntary Deviate Sexual Intercourse (IDSI), and one count of Criminal Attempt to Commit Statutory Rape under 18 Pa.C.S. §§ 3126(a)(1), 6301(a), 3127, 4304, 3123(a)(7), and 901, respectively. Ultimately, the Commonwealth dropped the IDSI and Criminal Attempt charges and Rodda pled *nolo contendere* to the remaining charges. The trial court accepted Rodda's plea and imposed sentence of twelve to sixty months' incarceration on each of two counts of Corruption of Minors, each sentence to be served consecutively. The trial court recognized that both sentences exceeded the standard range of the sentencing guidelines.

Trial Court Opinion, 2/4/97, at 3. On the remaining counts, the court imposed sentence to run concurrently and assessed fines and costs. The court denied Rodda's motion for modification of sentence and Rodda filed this appeal.

¶ 3 Initially, Rodda raised a single issue for review, asserting that the trial court "imposed a manifestly unreasonable and excessive sentence, above the aggravated range of the guidelines … without expressing adequate reasons to justify imposition of such a severe sentence." Brief for Appellant, STATEMENT OF QUESTION INVOLVED, at 4. In support of his assertion, Rodda argued that the court "did not state the permissible range of sentencing under the guidelines prior to imposing sentence," in violation of this Court's pronouncement in *Royer*. *Id.* at 13. The Commonwealth countered that the trial court had "displayed a proper awareness of the sentencing guidelines," and so, had acted in accordance with this Court's decisions in *Commonwealth v. Johnson*, 446 Pa.Super. 192, 666 A.2d 690 (Pa.Super.1995), and *Commonwealth v. Canfield*, 432 Pa.Super. 496, 639 A.2d 46 (Pa.Super.1994). Brief for Appellee at 4. In a memorandum decision, a panel of this Court concluded that the trial court did not display an awareness of "the proper starting point under the sentencing guidelines before it decided to sentence outside them," and voted to reverse the judgment of sentence and remand for resentencing. *Commonwealth v. Rodda*, No. 42 Pittsburgh 1997, unpublished memorandum at 4 (Pa.Super. filed May 19, 1998). We granted the Commonwealth's request for reargument to evaluate *Royer* and its progeny, and to resolve any conflict *Royer* may pose with our decisions in *Canfield* and *Johnson*.

¶ 4 Appellate review of sentencing issues is prescribed by 42 Pa.C.S. § 9781, and is discretionary as to all aspects of sentencing except legality of the sentence. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). We will grant allowance of appeal only where the appellant avers that there is a substantial question whether the sentence imposed is appropriate under the Sentencing Code, 42 Pa.C.S. §§ 9701–9799.6.

*Canfield,* 639 A.2d at 48 (quoting *Commonwealth v. Jones,* 418 Pa.Super. 93, 613 A.2d 587, 590 (Pa.Super.1992) (en banc)). We will be inclined to recognize a substantial question "where an appellant advances a colorable argument that the trial court's actions are inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process." *Id.* Where the appellant asserts that the trial court failed to state sufficiently its reasons for imposing sentence outside the sentencing guidelines, we will conclude that the appellant has stated a substantial question for our review. *Commonwealth v. Wagner,* 702 A.2d 1084, 1086 (Pa.Super.1997). Accordingly, we find that Rodda has stated a substantial question pursuant to 42 Pa.C.S. § 9781(b).

¶ 5 "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Johnson,* 666 A.2d at 693. In this context, an abuse of discretion is not shown merely by an error in judgment. *Canfield,* 639 A.2d at 50 (citing *Commonwealth v. Kocher,* 529 Pa. 303, 305, 602 A.2d 1308, 1310 (1992)). Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Id.*

¶ 6 Our review of Rodda's assertions of error must first emphasize the mandates of the Sentencing Code. The Code requires, in pertinent part, that in imposing sentence, the court:

> shall ... consider any guidelines for sentencing adopted by the Pennsylvania Commission on Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing).... In every case where the court imposes a sentence outside the sentencing guidelines ... the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds

for vacating the sentence and resentencing the defendant.

42 Pa.C.S. § 9721(b). We have interpreted these provisions to require, at minimum, that when a court deviates from the sentencing guidelines, it must indicate that it understands the suggested sentencing range. *Commonwealth v. Chesson,* 353 Pa.Super. 255, 509 A.2d 875, 876 (Pa.Super.1986).

¶ 7 Following careful scrutiny of the record, we are unable to conclude, based on the sentencing court's contemporaneous statement, that the court displayed the requisite understanding of the guidelines range. We stress, however, that neither the Code nor our decisions substantiate Rodda's suggestion that the sentencing court must recite the guidelines range on every occasion where the sentence imposed exceeds that range. Though our decisions have restated the language in *Royer* ostensibly requiring such recitation, we have vacated sentence in the absence of a guidelines recitation only upon a proper showing that the court was guided in its sentencing decision by a material misapprehension of the applicable range under the guidelines, *see, e.g., Commonwealth v. Wagner,* 702 A.2d 1084 (Pa.Super.1997); *Commonwealth v. Byrd,* 441 Pa.Super. 351, 657 A.2d 961 (Pa.Super.1995); *Commonwealth v. Breter,* 425 Pa.Super. 248, 624 A.2d 661 (Pa.Super.1993); *Commonwealth v. Moyer,* 421 Pa.Super. 102, 617 A.2d 744 (Pa.Super.1992); *Commonwealth v. Rich,* 392 Pa.Super. 380, 572 A.2d 1283 (Pa.Super.1990); *Commonwealth v. Charles Jefferson Smith,* 340 Pa.Super. 72, 489 A.2d 845 (Pa.Super.1985), or upon evidence that the court ignored the guidelines, in contravention of the Sentencing Code, *see, e.g., Commonwealth v. Gause,* 442 Pa.Super. 329, 659 A.2d 1014 (Pa.Super.1995); *Commonwealth · v. Kephart,* 406 Pa.Super. 321, 594 A.2d 358 (Pa.Super.1991); *Commonwealth v. Sanchez,* 372 Pa.Super. 369, 539 A.2d 840 (Pa.Super.1988) (en ·banc); *Commonwealth v. Vinson,* 361 Pa.Super. 526, 522 A.2d 1155 (Pa.Super.1987); *Chesson,* 509 A.2d 875. Moreover, we have affirmed sentence where the record demonstrated that the sentencing court considered the guidelines and was aware that the sentence it imposed exceeded the guidelines range, though it did not, in

fact, recite the range. *See, e.g., Commonwealth v. Hutchins*, 453 Pa.Super. 209, 683 A.2d 674 (Pa.Super.1996); *Johnson*, 666 A.2d 690, *Canfield*, 639 A.2d 46.

¶ 8 Accordingly, we take this opportunity to dispel the misconception, typified by Rodda's appeal, that a sentencing court must evoke "magic words" in a verbatim recitation of the guidelines range to satisfy the mandate of the Sentencing Code. *Canfield*, 639 A.2d at 51.

¶ 9 In *Royer*, we considered, *inter alia*, whether the trial court had accorded adequate consideration, as required by section 9721, to the recently promulgated sentencing guidelines. *Royer*, 476 A.2d at 456 (noting that the guidelines were adopted by the legislature on May 14, 1982, to become effective on July 22, 1982). Recognizing the complexity of the guidelines, we noted our concern that the record failed to establish that the trial judge was even aware of the applicable sentencing range. *Id.* at 458. Indeed, the tenor of the court's abbreviated reply when counsel sought to explain the guidelines suggested that the court had failed to consider them, and so had violated the Sentencing Code. *Id.* Consequently, we fashioned the language now at issue to assure that trial courts would grant appropriate consideration to the guidelines and would apply the suggested sentences in a dispassionate and systematic way. *Id. See also Chesson*, 509 A.2d at 876 ("The chief concern expressed in *Royer* was that the sentencing court be at least familiar with the suggested guidelines ranges."). Accordingly, our subsequent jurisprudence has focused not merely on the recitation of formulaic language, but on whether the court did, in fact, consider the guidelines in the measured, rational fashion contemplated by the Sentencing Code.

¶ 10 Thus, we have acted, as in *Royer*, to vacate sentence in a host of cases where the record suggested that though the court had considered the guidelines, it applied an incorrect sentence based on a misconception of the applicable sentencing range. In *Rich*, we vacated sentence because "not only did the sentencing court not identify the applicable guideline ranges or why the sentence deviated from them, but the Commonwealth[,] at

sentencing[,] provided the sentencing court with incorrect information concerning the maximum recommendation under the guidelines." *Rich*, 572 A.2d at 1286 (Rowley, J., concurring). We concluded accordingly that "[i]n light of the disparate information provided to the sentencing court and the absence of any statement from the sentencing court that he was aware of the correct guideline recommendation, it is appropriate to vacate the judgment of sentence and remand for resentencing." *Id.*

¶ 11 Similarly, in *Moyer*, we observed that "at the only point in the sentencing hearing when the subject of the guidelines was even mentioned, the court and prosecuting attorney demonstrated a misunderstanding as to how the sentence should be correctly calculated pursuant to the guidelines." *Moyer*, 617 A.2d at 747. Consequently, we vacated the sentence, reasoning that the trial court's flawed deliberation was tantamount to an absence of consideration because it provided "no means of ascertaining whether or not the court deviated from the proper starting point." *Id.* at 748.

¶ 12 More recently, in *Byrd*, we vacated sentence where the trial court's error in failing to recite the range was compounded by the court's belief that the sentence it imposed was in the "aggravated range," though in fact it exceeded the guidelines. *Byrd*, 657 A.2d at 964. Though we restated the recitation requirement in *Royer*, we focused our decision on the confusion apparent in the record, reasoning that "while the sentencing court did provide reasons for the sentence imposed, these reasons were advanced to support a sentence in the aggravated range. Nowhere did the court indicate that it was in fact sentencing Appellant outside the guidelines . . . ." *Id.* at 964. We emphasized accordingly that "[a]t the minimum, the court must indicate that it understands the sentencing guideline range, in those cases in which the court deviates from the guidelines." *Id.* at 963. *See also Wagner*, 702 A.2d at 1086 (trial court stated reasons for sentencing in "aggravated range" but imposed sentence outside guidelines); *Breter*, 624 A.2d at 663 (trial court indicated on sentencing form that appellant was sen-

tenced in the standard guideline range, but sentence imposed exceeded guidelines).

¶ 13 Conversely, where the record has reflected that the court acted on a sound understanding of the sentencing range and imposed sentence accurately, we have affirmed the judgment of sentence even in the absence of a guidelines recitation. Thus, in *Hutchins*, we affirmed solely on the basis of the trial court's notations on the sentencing guidelines form. *Hutchins*, 683 A.2d at 677. Though the record reflected no recitation of the sentencing range "on the record, at sentencing, in the defendant's presence," *see Royer*, 476 A.2d at 458, we found "no violation of *Royer* . . . ." *Hutchins*, 683 A.2d at 677. In support of our reasoning, we returned to *Royer* for the proposition that "the court must indicate that it understands the sentencing guideline range, in those cases in which the court deviates from the guidelines." *Id.* (quoting *Royer*, 476 A.2d at 458). *See also* 42 Pa.C.S. § 9721(b). Because the court had noted on the sentencing guideline form that both sentences imposed were "guidelines departures," we concluded: "It is clear from the information on the sentencing form that the court was aware of and considered the guideline recommendations, but chose to depart from them . . . ." *Hutchins*, 683 A.2d at 677.

¶ 14 We employed similar rationale in *Johnson*, where significantly, we vacated sentence on one count but affirmed on another. *Johnson*, 666 A.2d at 694. In support of our disposition, we noted that the court appeared initially confused, having suggested that the sentences imposed were within the standard range when, in fact, both exceeded the guidelines. *Id.* at 693. Citing *Chesson*, we vacated sentence on the first count, reasoning: "We cannot analyze whether there are adequate reasons for the deviation unless it is first apparent that the court was aware of, and considered the guidelines." *Id.* However, because the court corrected its error when sentencing on the second count, we affirmed upon the recognition that the court "started at the proper point by stating on the record that he intended to sentence outside the guidelines on this count." *Id.* at 694.

¶ 15 Similarly, in *Canfield*, we affirmed the judgment of sentence in the absence of a guidelines recitation because, as distinguished from *Royer*, "there [was] no evidence that the trial court was incognizant of the guidelines; rather, the sentencing transcript strongly suggest[ed] that the trial court was acutely aware of the [applicable sentencing range]." *Canfield*, 639 A.2d at 50. We recognized, accordingly, that the statutory requirements of section 9721(b) had been met. *Id.* at 51. Though we cautioned the trial court that "prior to sentencing outside the guidelines, it would do well to specifically articulate the guideline range of sentences," we declined to remand for resentencing. *Id.* at 51–52. To do so, we concluded, in the presence of a record that effectively documented the court's consideration of the guidelines, would merely mandate the use of "magic words" and "exalt form over substance." *Id.*

¶ 16 We find the disposition in *Canfield* a measured and thoughtful resolution of the potential pitfalls likely to arise from strict application of the recitation requirement in *Royer*. Thus, while we continue to suggest that "prior to sentencing outside the guidelines, [the trial court] would do well to specifically articulate the guideline range of sentences," *see Canfield*, 639 A.2d at 51–52, we recognize that such a recitation is not uniformly necessary to establish "that the court was aware of, and considered, the guidelines," *see Chesson*, 509 A.2d at 876. Accordingly, we hold that when imposing sentence, a trial court has rendered a proper "contemporaneous statement" under section 9721(b) of the Sentencing Code, so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them.

¶ 17 Applying this standard to the case at bar, we find the record insufficient to show that the court considered and understood the guidelines applicable to Rodda's offenses.

¶ 18 The sentencing guidelines provide that a defendant shall be sentenced under the version of the guidelines in effect at the time a crime was committed, regardless of the date on which sentence is imposed. *See*

*Commmmonwealth v. Greene,* 702 A.2d 547, 552 n. 9 (Pa.Super.1997) (citing 204 Pa.Code § 303.1(c)). Here, the record establishes that the offenses in question occurred "on or about the Summer of 1989," and "on or about the years of 1990 and 1991." Criminal Informations filed 4/4/96 at Cambria County Criminal Action No. 0299(C) 1996 and 0300(D) 1996. Accordingly, the court was required to consider the guidelines as promulgated on April 25, 1988, and as amended on August 9, 1991 and December 20, 1991.

¶ 19 On the dates in question, Corruption of Minors was graded as a misdemeanor of the first degree carrying an offense gravity score of three. Sentencing Guidelines Implementation Manual, April 25, 1988, § 303.8(c)(3); Sentencing Guidelines Implementation Manual, August 9, 1991, § 303.8(c)(3); *New Offense Gravity Score of "N,"* MONITOR (Pennsylvania Commission on Sentencing, State College, PA), March 1992, at 3. Where, as here, the defendant's prior record score is zero, the earlier version of the guidelines prescribes punishment in the aggravated range of twelve to eighteen months' confinement, while the revisions of August 1991 and December 1991 prescribe six to twelve months' confinement with eligibility for boot camp. Sentencing Guidelines Implementation Manual, April 25, 1988, § 303.8(c)(3), *supra,* at 10; Sentencing Guidelines Implementation Manual, August 9, 1991, § 303.8(c)(3), *supra,* at 12(b).

▉ ¶ 20 We find the court's statement unfortunately deficient. Though the court recognized the role of the guidelines in suggesting an appropriate sentence, N.T., Sentencing, 12/19/96, at 5, it failed to demonstrate its understanding of the applicable sentencing ranges under the guidelines. Following the sentencing colloquy, the court stated merely, "I have determined . . . that it's appropriate to sentence you above the guideline range." *Id.* The court then imposed sentence on two counts of Corruption of Minors, directing consecutive terms of incarceration for twelve to sixty months' duration. *Id.* at 7, 12.

¶ 21 The court's vague description of the sentence as "above the guideline range," fails to demonstrate that the court understood the

possibility that differing ranges applied under the respective versions of the sentencing guidelines. Indeed, it suggests that the court may have believed that the sentence commenced beyond all of the respective aggravated ranges when, clearly, it did not. In point of fact, the sentence did not exceed the aggravated range of the earlier version of the guidelines in effect throughout 1989, 1990 and until August 9, 1991. Rather, the sentence fell on the cusp of the standard range, zero to twelve months, and the aggravated range, twelve to eighteen months. The court's failure to recognize the potential impact of this version of the guidelines, and the potential for conflict between the applicable guidelines revisions, suggests that in imposing sentence, the court acted under a significant misapprehension of the applicable guidelines ranges. Thus, on the basis of the record now before us, we cannot conclude that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them. Accordingly, we find the court's statement of the reasons for deviating from the guidelines impermissibly deficient.

¶ 22 In so holding, we recognize that despite the court's comments at sentencing to the contrary, the sentence actually imposed did not depart from the applicable guideline ranges. The issue originally raised by Appellant is whether the sentencing court "imposed a manifestly unreasonable and excessive sentence, above the aggravated range of the guidelines . . . without expressing adequate reasons to justify imposition of such a severe sentence." Brief for Appellant, *supra,* at 4. Appellant, in support of this argument, refers to an alleged violation of the *Royer* holding, but, in fact, the sentence did not exceed the aggravated range. Rather, it fell within the standard or aggravated range, depending upon which edition of the guidelines is applied. If the sentence is within the aggravated range, the sentencing court is still required to state its reasons for choosing an aggravated sentence on both the record and on the Pennsylvania Commission on Sentencing Guideline Sentence Form. *See* 204 Pa.Code. § 303.3(f). Appellant's true complaint is directed to the reasons given for the

sentence. While the sentencing court did express specific reasons for the sentence imposed, including the tender age and impact statement of the victims, and the repetitive nature of Appellant's conduct, it did not clearly demonstrate an understanding of the applicable guideline ranges. Thus, a remand for resentencing is necessary so that the sentencing court can clearly identify whether the sentence it wishes to impose is meant to be a departure from the guidelines or a sentence in the aggravated range.

¶ 23 We are mindful that our decision addresses the application of section 9721(b) where the trial court expressed its belief that it exceeded the aggravated range under past versions of the guidelines. Our holding has no immediate application under the June 13, 1997 revision now in effect. Whereas prior versions of the guidelines prescribed sentencing *ranges* where the evidence established aggravating or mitigating factors, the 1997 revision suggests only an aggravated *minimum* and a mitigated *minimum* term of confinement. Sentencing Guidelines Implementation Manual, 5 th Ed., § 303.16 (1997) (Basic Sentencing Chart). This change may compel clarification of the point at which a sentence is "outside the guidelines" within the meaning of section 9721(b) of the Sentencing Code. However, we do not seek to resolve that question on this appeal. We reemphasize that the objective of the Sentencing Code is met only where the record demonstrates with clarity the trial court's understanding of the suggested sentences under the sentencing guidelines. *See Chesson, supra.*

¶ 24 Judgment of Sentence **VACATED.** Case **REMANDED** for resentencing. Jurisdiction **RELINQUISHED.**