J-S12009-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ARTHUR BRAIN B. HEATH | : | |
| | : | |
| Appellant | : | No. 3262 EDA 2018 |

Appeal from the Judgment of Sentence Entered February 28, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002604-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ARTHUR BRAIN B. HEATH | : | |
| | : | |
| Appellant | : | No. 3352 EDA 2019 |

Appeal from the Judgment of Sentence Entered February 28, 2014
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0002606-2011

BEFORE:   SHOGAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY SHOGAN, J.:                    Filed: May 14, 2020

Appellant, Arthur Brain B. Heath,[1] appeals *nunc pro tunc* from the

judgment of sentence entered on February 28, 2014, at trial court docket

_____

[*] Retired Senior Judge assigned to the Superior Court.

numbers CP-51-CR-0002604-2011 and CP-51-CR-0002606-2011.[2] We affirm.

The trial court summarized the relevant facts of this case as follows:

> This case proceeded to a waiver trial on September 10, 2013. The facts are as follows:
>
> The following witnesses testified for the Commonwealth: Philadelphia Police Sergeant Kevin Conway; Philadelphia Police Detectives James Waring, Timothy Cliggett, Joseph Murray, and Ralph Domenic; Victims LaShawn Gonzalez and Raul Dreke; Philadelphia Police Officers Bruce Cleaver and Frank Sackosky; Assistant District Attorneys Michael Barry and Erin Boyle; and lay witnesses John Bowie, Christopher Floyd, and Latrell Howard.
>
> On April 27th, 2010, around 1:30 P.M., LaShawn Gonzalez ("Gonzalez"), Raul Dreke ("Dreke"), and Christopher Floyd

_____

[1] Throughout the certified record, Appellant is referred to as "Arthur Brain B. Heath." However, in the *nunc pro tunc* post-sentence motion, Appellant's name is listed as "Arthur Brian B. Heath." Post Sentence Motions Nunc Pro Tunc, 6/29/18. Because the majority of documents in the record list the spelling as "Brain," we leave the caption, which reflects that Appellant's name is "Arthur Brain B. Heath," unchanged.

[2] On November 13, 2019, this Court issued a rule to show cause why the appeals at trial court docket numbers CP-51-CR-0002604-2011 and CP-51-CR-0002606-2011, which were both docketed initially at Superior Court docket number 3262 EDA 2018, should not be quashed pursuant to ***Commonwealth v. Walker***, 185 A.3d 969 (Pa. 2018). Appellant's counsel responded that he had complied with ***Walker*** and filed separate appeals at each trial court docket number. Response to Rule, 11/21/19. After additional review, we concluded that counsel was correct; counsel had indeed filed separate appeals. Order, 12/11/19. Accordingly, we vacated the rule to show cause. ***Id.*** Additionally, the appeal at trial court docket number CP-51-CR-0002604-2011 was assigned Superior Court docket number 3262 EDA 2018, and the appeal at trial court docket number CP-51-CR-0002606-2011 was assigned Superior Court docket number 3352 EDA 2019. ***Id.*** Finally, we consolidated the appeals at 3262 EDA 2018 and 3352 EDA 2019 for disposition. ***Id.***

("Floyd"), went to a corner deli at the intersection of 20th and Susquehanna streets Philadelphia, PA, to pick up beer, chips, and candy. Notes of Testimony hereinafter N.T. 09/11/2013 at 24-26; N.T. 09/12/2013 at 32. Upon entering the store, two (2) other men entered and were greeted by the trio as they received the goods they ordered. N.T. 09/11/2013 at 27. After receiving their items, the trio left the store and walked towards Gonzalez's house down 20th street. N.T. 09/11/2013 at 28-29. As they walked down the street, the men they had previously greeted inside the store were stationed just around the corner of the deli. N.T. 09/11/2013 at 67-68. [A]s they walked by the men, Floyd heard one of them say "what are you waiting for?" N.T. 09/11/2013 at 30.

At that time, one of the men pulled out a semi-automatic hand gun and fired on the trio. N.T. 09/11/2013 at 29, 63. The shooters then fled westward on Susquehanna Avenue. N.T. 09/11/2013 at 69. Gonzalez was shot in the back, chest, and lower abdomen, and Dreke was shot in the shoulder.[10] N.T. 09/11/2013 at 29. The day before the shooting[,] a close friend of Appellant, Paris Grant, had been murdered on the same corner at 20th and Susquehanna streets. N.T. 09/13/2013 at 57, 69. Rumors circulating in the neighborhood implicated Floyd's family in the slaying after Floyd's brother (Wesley Clark) paid for marijuana using a bloody ten dollar bill.[11] N.T. 09/13/2013 at 76-77.

[10] Dreke did not realize that he had been shot until he arrived at his home after hurrying to get away from the scene of the shooting. N.T. 09/11/2013 at 62-63.

[11] Testimony regarding this murder was introduced as [Appellant's] motive for shooting at the eventual victims and Floyd.

Gonzalez testified that he did not see who shot him, but identified and described the men he passed on the sidewalk just prior to the shooting and the shooter, specifically, as wearing a white shirt and a white hat. N.T. 09/11/2013 at 30-32. Dreke described the shooters as black males one 5'10" in a black shirt and a tan hat with a gold brim; the other skinnier with a white shirt on. N.T. 09/11/2013 at 67-68. He further described both men as looking to be 23 or 24 years old. N.T. 09/11/2013 at 68. The entirety of the shooting was captured on a nearby surveillance camera. N.T. 09/11/2013 at 10. As Gonzalez lay on the ground bleeding, Floyd ran from the scene to his home. Once at home, he

told his Uncle, Latrell Howard (Howard"), that "Art (Appellant) shot Shon (Gonzalez)." N.T. 09/12/2013 at 35; N.T. 09/13/2013 at 58. Howard assisted the Officers in getting Gonzalez into the back of the police cruiser where he was transported to Temple University Hospital for treatment. N.T. 09/13/2013 at 40, 42, 54.

Gonzalez was placed in the intensive care unit at Temple University Hospital for a week as a result of the shooting. N.T. 09/11/2013 at 33. His [carotid] artery was shattered and the doctors placed an artery from his leg into his neck. N.T. 09/11/2013 at 33. At the time of the trial, Gonzalez was still on a number of medications as a result of the shooting, and had recently wrapped up a physical therapy regimen[]. N.T. 09/11/2013 at 34-35. Dreke was taken from his home by ambulance to Temple University Hospital. N.T. 09/11/2013 at 65. Dreke was treated for his shoulder wound and released the same day. N.T. 09/11/2013 at 66.

On a later date, a highway patrol officer pulled over a car containing four men. N.T. 09/12/2013 at 17. One of those men, John Bowie ("Bowie"), was in possession of a hand gun that was the weapon used in the shooting of Gonzalez and Dreke.[12] N.T. 9/12/2013 at 13-14, 20. Bowie was the other man on the corner with Appellant when the victims were shot. N.T. 09/12/2013 at 41; N.T. 09/13/2013 at 61.

[12] Bowie testified that he never gave the gun to [Appellant], and that the gun never left his possession at any time. N.T. 09/12/2013 at 14.

The U.S. Marshals located Appellant on the 1700 block of Edgely Street on August 24, 2010 at about 2:40 P.M. N.T, 09/10/2013 at 14. The U.S. Marshals approached the residents and proceeded to announce their presence. N.T. 09/12/2013 at 7. At that time, Appellant appeared in a second story window where he attempted to throw a gun, which was in his possession, onto the roof of the residence. N.T. 09/12/2013 at 8-9. Appellant was unable to reach the roof, and the gun landed in the backyard where it was recovered by the U.S. Marshals. N.T. 09/12/2013 at 9. Appellant managed to get on to the roof of the series of row homes where he remained for at least an hour. N.T. 09/12/2013 at 12. The U.S. Marshals then lost sight of the Appellant. N.T. 09/10/2013 at 15. With the assistance of a K-9 unit, they later located Appellant in the basement of a nearby home, hiding within

the wall of a small closet built to cover a heating unit. N.T. 09/10/2013 at 15. The Philadelphia Police and U.S. Marshals could not get the Appellant to come out from the inside of the wall, and at that point Appellant was stunned using a stun-gun and restrained by a Sergeant Conway. N.T. 09/10/2013 at 15-16.

Appellant testified in his own defense claiming that he was elsewhere at the time of the crime. N.T. 09/13/2013 at 68. Appellant claimed that he was visiting the mother of Paris Grant to offer his condolences, and, after that, he went to offer his condolences to the mother of Paris Grant's child. N.T. 09/13/2013 at 68-69. Appellant further testified that he was not in the possession of the gun owned by Bowie at the time of the crime. N.T. 09/13/2013 at 69-70. Additionally, he testified that the reason he evaded the police was because he was on the run from a parole violation stemming from a conviction in Delaware County, Pennsylvania. N.T. 09/13/2013 at 71.

Appellant was convicted on September 16, 2013, and subsequently sentenced on February 28, 2014. *See* Docket CP-51-C[R]-0002604-2011, CP-51-CR-0002606-2011. …

Trial Court Opinion, 6/21/19, at 4-7.

The trial court set forth the procedural history as follows:

On August 24, 2010, Appellant was arrested and charged with Attempted Murder in the First Degree,[1] Aggravated Assault,[2] Criminal Conspiracy,[3] Possession of an Instrument of Crime,[4] Terroristic Threats with the Intent to Terrorize Another,[5] Simple Assault,[6] Recklessly Endangering Another Person,[7] Firearms Not to be Carried Without a License [(a Violation of the Uniform Firearms Act) ("VUFA")],[8] and Carrying Firearms in Public in Philadelphia [(VUFA)].[9]

[1] 18 Pa. C.S. § 901.

[2] 18 Pa. C.S. § 2702.

[3] 18 Pa. C.S. § 903.

[4] 18 Pa. C.S. § 907.

[5] 18 Pa. C.S. § 2706.

- 5 -

<sup></sup>6 18 Pa. C.S. § 2701.

<sup></sup>7 18 Pa. C.S. § 2705.

<sup></sup>8 18 Pa. C.S. § 6106.

<sup></sup>9 18 Pa. C.S. § 6108.

On September 10, 2013, Appellant's case proceeded to a waiver trial on the charges of Attempted Murder, Aggravated Assault, and Criminal Conspiracy for one case, and Attempted Murder, Aggravated Assault, Criminal Conspiracy, Unlicensed Carrying of a Firearm, Carrying a Firearm in Public in Philadelphia, and Possession of an Instrument of a Crime. The charges of Terroristic Threats with the Intent to Terrorize Another, Simple Assault, Recklessly Endangering Another Person were nolle prossed prior to trial.

On September 16, 2013, Appellant was found guilty of two (2) counts of Attempted Murder, two (2) counts of Aggravated Assault, two (2) counts of Criminal Conspiracy, Unlicensed Carrying of a Firearm, Carrying a Firearm in Public in Philadelphia, and Possession of an Instrument of a Crime.

On February 28, 2014, Appellant was sentenced to an aggregate sentence of 2[8]½ to 5[7] years in prison.[3]

---

[3] The trial court sentenced Appellant as follows:

So my sentence, based on all that and considering all that, [at CP-51-CR-0002604-2011] on the attempted murder, your sentence is ten to 20 years incarceration. On the aggravated assault, that merges with the attempted murder. I'm not making an additional sentence on that. Same thing with the criminal conspiracy, that merges as well. So there's no additional sentence on that. On the firearms not to be carried without a license [(VUFA)], that sentence is three and-a-half to seven years incarceration. That would be consecutive. Carrying a firearm in public [(VUFA)], that's two and-a-half to five years incarceration, and that's consecutive. And possessing an instrument of crime, the sentence is two and-a-half to five years incarceration, and that will be consecutive. On

On February 09, 2015, Appellant filed a pro se PCRA [petition] alleging federal and state constitutional violations, ineffective assistance of counsel, and the unavailability of exculpatory evidence.

On August 03, 2015, Appellant's PCRA counsel John P. Cotter, was appointed by the court to represent Appellant.

On October 05, 2015, Appellant, through counsel, filed an amended PCRA [petition] alleging that trial counsel was ineffective for failing to file a direct appeal in violation of Appellant's State Constitutional rights.

On September 20, 2017, Appellant, through counsel, filed a supplement to his amended PCRA petition alleging that Appellant's pro se PCRA [petition] was timely filed according to 42 Pa. C.S. §§ 9543(a)(2)(vi), 9545(b)(1)(ii),(2).

On November 27, 2017, Appellant, through counsel, filed a second supplement to his amended PCRA petition alleging that trial counsel was additionally ineffective for failure to preserve the issue of the Appellant's timely filing of his first PCRA [petition].

On February 21, 2018, Appellant, through counsel, filed a third supplement to his amended PCRA petition alleging that trial counsel was ineffective for failing to discuss Appellant's rights to file post-sentence motions and appeals with Appellant.

On April 19, 2018, Appellant, through counsel, filed a fourth supplement to his amended PCRA petition alleging that trial counsel was ineffective for failure to introduce the video of the incident showing the perpetrator's face which would have shown that the perpetrator was not Appellant.

---

the attempted murder on the other transcript, that's [CP-51-CR-0002606-2011], the sentence is ten to 20 years incarceration, and that's consecutive.

N.T., 2/28/14, at 30-31. The remaining charges merged for sentencing purposes. *Id.* at 31. Thus, Appellant's aggregate sentence was twenty-eight and one-half to fifty-seven years.

On June 27, 2018, this court granted Appellant's PCRA petition reinstating Appellant's appellate rights, and allowing Appellant to file post-sentence motions.

On June 29, 2018, Appellant, through counsel, filed both a motion to reconsider sentence on the grounds that the sentence of 2[8]½ to 5[7] years was unreasonable, and a motion for a new trial based on the fact that Christopher Floyd was given a deal for his testimony in Appellant's case, and that this fact was not disclosed to the defense.

On October 31, 2018, Appellant's motions to reconsider sentence and for a new trial were denied by operation of law.

On November 05, 2018, Appellant, through counsel, filed his Notice of Appeal to the Superior Court.

On November 09, 2018, this court ordered Appellant to file his Statement of Errors Complained of on Appeal pursuant to 1925(b). Appellant subsequently filed his Concise Statement of Errors Complained of on Appeal on January 23, 2019.

Trial Court Opinion, 6/21/19, at 1-4.

On appeal, Appellant presents the following issues for this Court's consideration:

I. Is [A]ppellant is [sic] entitled to a new sentence hearing because the trial court used the minimum mandatory sentence statute to impose the sentence when this statute has been held to be unconstitutional and illegal?

II. Is Appellant is [sic] entitled to a new sentence hearing when the sentence of 2[8]½ to 5[7] years in prison was a manifest abuse of discretion and unreasonable because there was no support on the record for a sentence outside or above the sentence guidelines and the trial court admitted impermissible hearsay evidence at the sentence hearing?

III. Is [A]ppellant is [sic] entitled to a new trial because of after discovered evidence that would establish his innocence of the crimes?

Appellant's Brief at unnumbered 2.[4]

In his first issue, Appellant asserts that his sentence was illegal because the trial court relied on 42 Pa.C.S. § 9712, a mandatory-minimum sentencing statute, which was declared unconstitutional. Appellant's Brief at 15. After review, we conclude that no relief is due.

Initially, we note that Appellant did not raise this issue in his Pa.R.A.P. 1925(b) statement. Generally, any issue not raised in a Pa.R.A.P. 1925(b) statement is deemed waived for appellate review. *Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005); *Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998). However, in this claim of error, Appellant challenges the legality of his sentence, and issues related to the legality of a sentence cannot be waived and may be considered *sua sponte*. *Commonwealth v. Bezick*, 207 A.3d 400, 402 n.2 (Pa. Super. 2019) (citations omitted). Accordingly, we proceed with our discussion.

The mandatory-minimum sentencing statute at issue, 42 Pa.C.S. § 9712,[5] was held unconstitutional. *Commonwealth v. Valentine*, 101 A.3d

---

[4] For purposes of our disposition, we have renumbered Appellant's issues.

[5] Section 9712, provided, in part, as follows:

> **(a) Mandatory sentence**.-- . . . any person who is convicted in any court of this Commonwealth of a crime of violence as defined in section 9714(g) . . . , shall, if the person visibly possessed a firearm or a replica of a firearm, whether or not the firearm or replica was loaded or functional, that placed the victim in

801, 812 (Pa. Super. 2014) (citing **Alleyne v. United States**, 570 U.S. 99 (2013) (holding that any fact that increases the mandatory minimum sentence is an element that must be submitted to the jury and found beyond a reasonable doubt)). Herein, though, there is no evidence in the certified record reflecting that the trial court relied on Section 9712 when fashioning Appellant's sentence. The only time the Commonwealth mentioned a "mandatory" sentence was in reference to attempted murder charges and the aggravated assault charge. N.T., 2/28/14, at 26. However, the trial court did not impose a five-year minimum sentence on either of the attempted murder convictions or aggravated assault; the trial court imposed ten-year minimum sentences on each of those convictions. N.T., 2/28/14, at 30-31.

Additionally, Section 9712 never applied to VUFA charges. **See** 42 Pa.C.S. § 9714(g) (setting the forth the crimes of violence for which a mandatory minimum sentence was applicable). Furthermore, the trial court did not impose a five-year minimum on either VUFA conviction. Finally, the trial court's Sentencing Form, Certified Record at docket entry #26, states that there is "no mandatory" sentence.

---

reasonable fear of death or serious bodily injury, during the commission of the offense, be sentenced to a minimum sentence of at least five years of total confinement notwithstanding any other provision of this title or other statute to the contrary. Such persons shall not be eligible for parole, probation, work release or furlough.

42 Pa.C.S. § 9712(a).

Before Section 9712 was declared unconstitutional, when that section was implicated, "The court ha[d] no authority to impose a sentence less than that required by a mandatory minimum provision established in statute." 204 Pa. Code § 303.9(h). In the case at bar, there is nothing in the record reflecting that Appellant received a mandatory-minimum sentence for any of his convictions, and there is no evidence that Section 9712 had any impact on Appellant's sentence.

Nevertheless, we are cognizant that the trial court requested that we remand this case. In its opinion, the trial court stated:

> Here, this Court gave consideration to mandatory minimum prescribed by 42 Pa. C.S.A. § 9712 specifically, when sentencing the Appellant [to an aggregate sentence] of 6 to 12 years imprisonment on the charges of firearms not to be carried without a license [(VUFA - 18 Pa.C.S. § 6106)], and Carrying a firearm in public [(VUFA - 18 Pa.C.S. § 6108)].

Trial Court Opinion, 6/21/19, at 8.

However, the Commonwealth argues that the trial court is not permitted to add analysis after the fact, *i.e.*, the trial court may not state in its Pa.R.A.P. 1925(a) opinion that it relied on Section 9712, when that "fact" is not supported by the record. Commonwealth Brief at 7-11. The Commonwealth is correct. *See Commonwealth v. Borrin*, 12 A.3d 466 (Pa. Super. 2011) (stating that "we cannot accept the trial judge's proclamation of his own intentions because those intentions were only known to the trial judge himself and do not appear on the face of the sentencing transcript."). When reviewing

only the certified record on appeal, it does not support the trial court's position.

Moreover, insofar as the trial court states that it relied on Section 9712 in crafting the aggregate VUFA sentences, we conclude that this statement is a *non sequitur*. If the mandatory minimum sentence was five years of incarceration, but the trial court instead imposed minimum sentences of three and one-half years and two and one-half years, respectively, there is no support for the trial court's statement. Section 9712 requires a mandatory minimum sentence of five years of imprisonment, and Appellant did not receive a five-year minimum for any conviction. Additionally, prior to being held unconstitutional, mandatory minimums applied to individual offenses; there is no authority for the proposition that a mandatory minimum can be applied across an aggregated sentence. 42 Pa.C.S. § 9712(a); **see also Commonwealth v. McLaughlin**, 574 A.2d 610, 617 (Pa. Super. 1990) (separate applicable crimes require separate mandatory sentences).

In sum, nothing in the record supports the conclusion that Section 9712 impacted Appellant's sentence. We decline the trial court's invitation to remand this matter as we discern no illegality in the sentence imposed. Accordingly, Appellant is due no relief on his first issue.

Next, Appellant avers that the trial court abused its discretion by imposing a manifestly unreasonable sentence where there was no support for a sentence outside or above the Sentencing Guidelines. Appellant also asserts

that the trial court erred in admitting impermissible hearsay evidence at the sentence hearing. Appellant's Brief at 11-12.

Appellant's issues challenge the discretionary aspects of his sentence. We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." **Commonwealth v. Zirkle**, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. **Commonwealth v. W.H.M.**, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in **Commonwealth v. Moury**, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

**Id.** at 170 (citing **Commonwealth v. Evans**, 901 A.2d 528, 533 (Pa. Super. 2006)).

Here, the first three requirements of the four-part test are met: Appellant filed a timely appeal; Appellant preserved the sentencing issues at

the sentencing hearing[6] or in his *nunc pro tunc* post-sentence motion;[7] and Appellant included a statement raising this issue in his brief pursuant to Rule 2119(f). ***Moury***, 992 A.2d at 170. Therefore, we determine whether Appellant raised a substantial question.

"We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Ahmad***, 961 A.2d 884, 886-887 (Pa. Super. 2008). Allowance of appeal will be permitted only when the appellate court determines that there is a substantial question that the sentence is not appropriate under the Sentencing Code. ***Commonwealth v. Hartle***, 894 A.2d 800, 805 (Pa. Super. 2006). A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. ***Id***.

In his Pa.R.A.P. 2119(f) statement, Appellant asserts that the trial court abused its discretion when it imposed sentences outside the aggravated range

---

[6] In its brief, the Commonwealth asserts that Appellant failed to preserve the hearsay issue relative to the discretionary aspects of Appellant's sentence. Commonwealth's Brief at 16, n.4. We disagree. An appellant may preserve a challenge to the discretionary aspects of a sentence either by raising it at the time of sentencing or in a timely filed post-sentence motion. ***Commonwealth v. Baker***, 72 A.3d 652, 662 (Pa. Super. 2013). The record reveals that Appellant objected to the hearsay at the sentencing hearing. N.T., 2/28/14, at 16. Accordingly, we do not find this issue waived.

[7] Post Sentence Motions Nunc Pro Tunc, 6/29/18.

of the Sentencing Guidelines and ordered the sentences to run consecutively. Appellant avers that the trial court failed to consider relevant sentencing factors, mitigating circumstances, and rehabilitative needs, and instead imposed unreasonable consecutive sentences. Appellant's Brief at 3-4.

Appellant's issues raise substantial questions for our review. ***See Commonwealth v. Hill***, 210 A.3d 1104, 1116 (Pa. Super. 2019) (finding a substantial question where the appellant averred that the trial court failed to consider certain sentencing factors in conjunction with an assertion that the sentence imposed was excessive); ***see also Commonwealth v. P.L.S.***, 894 A.2d 120, 127 (Pa. Super. 2006) (claim that court relied on impermissible factors, such as uncharged criminal conduct, raises substantial question); ***see also Commonwealth v. Rodda***, 723 A.2d 212, 214 (Pa. Super. 1999) ("Where the appellant asserts that the trial court failed to state sufficiently its reasons for imposing sentence outside the sentencing guidelines, we will conclude that the appellant has stated a substantial question for our review."). Because Appellant's sentencing issues are interrelated, we address them concurrently.

It is well settled that when the trial court has the benefit of a presentence investigation ("PSI") report, it is presumed that the court was both aware of and appropriately weighed all relevant information contained therein. ***Commonwealth v. Griffin***, 804 A.2d 1, 8 (Pa. Super. 2002). Where the trial court imposes a sentence outside of the Sentencing Guidelines, "the

court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant." **Rodda**, 723 A.2d at 214 (quoting 42 Pa.C.S. § 9721(b)). "We have interpreted these provisions to require, at minimum, that when a court deviates from the sentencing guidelines, it must indicate that it understands the suggested sentencing range." **Id.** (citation omitted). Therefore, when deviating from the Sentencing Guidelines, the trial court must indicate its understanding of the suggested ranges. **Id.** However, there is no requirement that the trial court must state "magic words" in a *verbatim* recitation of the Sentencing Guideline's ranges to satisfy this requirement. **Id.** at 215. When imposing sentence, the trial court has rendered a proper "contemporaneous statement" where "the record demonstrates with clarity that the court considered the Sentencing Guidelines in a rational and systematic way and made a dispassionate decision to depart from them." **Id.** at 216.

After review, we discern no abuse of discretion in the sentences imposed. At Appellant's sentencing, the trial court was apprised of the Sentencing Guidelines and the maximum sentences available, stated that it had reviewed and considered the PSI report, noted the injuries to the victims, relayed its duty to protect the community, and concluded that Appellant was incapable of rehabilitation. N.T., 2/28/14, at 6-8, 26-30. The trial court was aware of the appropriate sentencing factors and mitigating evidence *via* its

consideration of the PSI report. *Griffin*, 804 A.2d at 8; *Rodda*, 723 A.2d at 214-216. "[I]t would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." *Griffin*, 804 A.2d at 8. Thus, it is evident that the trial court considered the Sentencing Guidelines and made a dispassionate decision to depart therefrom. *Rodda*, 723 A.2d at 215-216.

Finally, to the extent that Appellant is unhappy with the duration of his incarceration due to the consecutive nature of the sentences, the decision to order sentences to run concurrently or consecutively is left to the discretion of the trial court. *Commonwealth v. Radecki*, 180 A.3d 441, 470 (Pa. Super. 2018). It is well settled that an appellant is not entitled to a "volume discount" for his crimes by having all of his sentences run concurrently. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). "The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Moury*, 992 A.2d at 171-172 (citation omitted). Herein, Appellant has not asserted any "extreme circumstances." *Radecki*, 180 A.3d at 470. We conclude that the trial court acted within its discretion in imposing consecutive sentences after reviewing the facts of the case, Appellant's history, relevant sentencing factors, and the PSI report.

With respect to the trial court admitting hearsay regarding uncharged criminal activity, we conclude there was no abuse of discretion. We point out that the entirety of Appellant's argument concerning hearsay is as follows:

> The trial court over the objection of trial defense counsel also considered impermissible hearsay evidence from a Detective who testified a suspect in pharmacy robberies that the detective was interviewing said that the defendant was involved in those robberies. The trial court should not have considered this testimony because it was hearsay. **Pa. R. E. 802.**

Appellant's Brief at 12 (verbatim).

The record reflects that Detective Joseph Murray testified during sentencing about a separate investigation into home invasions and robberies at pharmacies in Southwest Philadelphia where one suspect identified Appellant as a participant in those crimes. N.T., 2/28/14, at 17. Appellant's counsel objected to this statement, and the trial court overruled the objection. *Id.* Detective Murray then testified that the United States Attorney sought to charge Appellant in those robberies, but Appellant was never charged. *Id.* Detective Murray stated that he had not met Appellant, "but his associates who I arrested are -- violence wise, the worst group of people I've ever come across in 15 years in law enforcement." *Id.*[8]

Appellant avers that hearsay was admitted in violation of Pa.R.E. 802. Appellant's Brief at 12. However, it is well settled that a sentencing hearing is not a trial, and the court is not bound by the rules of evidence applicable to

---

[8] There was no objection to this characterization.

- 18 -

trials. ***Commonwealth v. Medley***, 725 A.2d 1225, 1229 (Pa. Super. 1999). The court may receive any relevant information for the purposes of fashioning a sentence. ***Id.*** Thus, hearsay concerning uncharged criminal conduct may be permitted at a sentencing hearing. ***Id.***; ***see also P.L.S.***, 894 A.2d at 130 ("the fact that a defendant is guilty of prior criminal conduct for which he escaped prosecution has long been an acceptable sentencing consideration"). Accordingly, we discern no abuse of discretion in the trial court overruling Appellant's objection and admitting Detective Murray's statement.

In his final issue, Appellant asserts that he is entitled to a new trial because there is after-discovered evidence establishing his innocence. Appellant's Brief at 16. Specifically, Appellant avers that the after-discovered evidence is that Cristopher Floyd ("Floyd"), a witness for the Commonwealth at Appellant's trial, received a lenient sentence after pleading guilty to aggravated assault and conspiracy. ***Id.*** Appellant claims that he discovered that at Floyd's sentencing hearing, the trial court indicated that there was an off-the-record discussion where the trial court agreed not to send Floyd back to prison if he would accept responsibility and plead guilty. ***Id.*** at 17. As discussed below, there is no mention of any consideration from the Commonwealth to Floyd relating to Appellant's case.

"A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). "To obtain a new trial based on after-discovered

evidence, the defendant must prove, by a preponderance of the evidence, that the evidence: (1) could not have been obtained before the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict." *Commonwealth v. Murray*, 174 A.3d 1147, 1153 (Pa. Super. 2017) (citing *Commonwealth v. Pagan*, 950 A.2d 270, 292 (Pa. 2008); Pa.R.Crim.P. 720(C)).

Appellant asserts that the instant matter is similar to the after-discovered evidence in *Commonwealth v. Perrin*, 108 A.3d 50 (Pa. Super. 2015). Appellant's Brief at 17. We disagree.

In *Perrin*, the appellant was granted a new trial based on after-discovered evidence. Therein, the appellant learned that a witness for the prosecution testified against the appellant pursuant to an agreement with the federal government. *Perrin*, 108 A.3d at 51. This evidence was discovered after the appellant was convicted and sentenced. *Id.* In the agreement, the witness was offered a significantly lighter sentence on federal charges in exchange for his cooperation with the prosecution in the appellant's case. *Id.*

In the case at bar, there is no evidence that Floyd cooperated with the prosecution of Appellant. In fact, at Appellant's trial, Floyd was asked if he was cooperating with the Commonwealth in exchange for favorable consideration in his case, and Floyd responded that there was no deal with the prosecution. N.T., 9/12/13, at 44, 82-83. Moreover, Assistant District

Attorney Erin Boyle addressed this issue the following day and reiterated that there was no deal between Floyd and the Commonwealth. N.T., 9/13/13, at 26-30. Thus, this case is readily distinguishable from **Perrin**.

Moreover, even if the trial court in Floyd's case made such a statement to Floyd, it has no impact on Appellant's case. As noted, the record in the instant case reflects that there was no sentencing agreement or promise of leniency made by the Commonwealth to Floyd in exchange for his testimony. The fact that the trial judge in Floyd's case may have asked Floyd to take responsibility in exchange for sentencing consideration **in his own case** has absolutely no bearing on Appellant's case. Appellant has not substantiated how his allegation would be used as anything other than impeachment evidence, and he has not established that the statement in Floyd's case would result in a different verdict in his own case. **Murray**, 174 A.3d at 1153. Therefore, we conclude that Appellant has failed to satisfy the requirements for after-discovered evidence. **Id.**

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge Colins joins this Memorandum.

Judge McCaffery concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/14/20